770 P.2d 377

**Josephine GIBBONS and Mary Lou Nicholson, Plaintiffs/Appellants,**

v.

**Luis CHAVEZ and Barbara Chavez, Defendants/Appellees.**

**No. 2 CA–CV 88–0249.**

Court of Appeals of Arizona, Division 2, Department B.

Dec. 22, 1988.

Reconsideration Denied March 15, 1989.

Desens, Behrens & Hitchcock by Tony K. Behrens, Bisbee, for plaintiffs/appellants.

Gary W. Ramaeker, Sierra Vista, for defendants/appellees.

## OPINION

ROLL, Judge.

Plaintiffs Josephine Gibbons and Mary Lou Nicholson appeal from the entry of summary judgment against them and in favor of Luis and Barbara Chavez and the award of attorneys' fees to the Chavezes. For the reasons set forth below, we affirm the entry of summary judgment in favor of the Chavezes but vacate the trial court's order awarding attorneys' fees to the Chavezes.

## FACTS

In October of 1986, Luis and Barbara Chavez rented a house in Bisbee, Arizona, to Michael and Terri Diaz. The lease provided in part:

PETS. Tenant agrees not to keep or permit to be kept on the premises, any dog, cat, bird, fish, reptile or other animal, unless prior written consent of landlord has been obtained and an appropriate pet deposit paid. Special permission to keep pets on the premises is made on an individual basis at the complete discretion of landlord.

On the last page of the lease agreement, the following written notation appears: "Domestic pets only with tenants responsible for any damage." The agreement also provided for the Chavezes' right to inspect the premises on 24 hours' notice.

The Chavezes knew that the Diazes owned a German shepherd, which was kept in the front of the house, and believed that they also owned a puppy, which was kept in the back yard. In actuality, the Diazes had three dogs. In addition to the German shepherd, they owned one pit bull dog and one dog which was half pit bull and half rottweiler. The latter two dogs were kept in the back yard. No evidence exists that the Chavezes were aware of the fact that any of the Diazes' dogs were of the pit bull breed.

On October 17, 1986, the Diazes' two pit bulls escaped from their yard and attacked plaintiff Josephine Gibbons.

## PROCEDURAL HISTORY

On October 14, 1987, plaintiffs filed a two-count complaint, one count of which alleged that the Chavezes knew that the Diazes kept pit bull dogs at their residence and knew that the dogs were of a violent and threatening disposition. This count demanded compensatory damages from the Chavezes.[1]

The Chavezes moved for summary judgment. Attached to their motion were affidavits from Luis and Barbara Chavez and Michael and Terri Diaz. All four affidavits recited that the Chavezes were unaware of the fact that the Diazes owned pit bulls. The trial court granted the Chavezes' motion for summary judgment and, pursuant to A.R.S. § 12–341.01, awarded the Chavezes attorneys' fees in the amount of $2,122.

## ISSUES ON APPEAL

On appeal, plaintiffs argue that the trial court erred in granting the Chavezes' motion for summary judgment and in awarding attorneys' fees to the Chavezes.

## LIABILITY OF LANDLORD

■ Plaintiffs argue that the Chavezes were negligent in failing to prevent the Diazes from keeping the pit bull dogs at the Diaz residence.

Our standard of review of the granting of summary judgment requires that we "view the evidence in the light most favorable to the party opposing the motion and

---

1. The other count of the complaint contained similar allegations against the Diazes.

draw all inferences fairly arising from the evidence in favor of that opposing party." *Auto–Owners Ins. Co. v. Moore*, 156 Ariz. 184, 185, 750 P.2d 1387, 1388 (App.1988). Summary judgment is only appropriate "where the record shows that there is no genuine dispute as to any material fact, that only one inference can be drawn from those facts, and that based upon the facts, the moving party is entitled to judgment as a matter of law." *Id.*

In *Brady v. Skinner*, 132 Ariz. 425, 646 P.2d 310 (App.1982), this court affirmed the entry of summary judgment in favor of a landlord who was sued for injuries received by a child when a mule owned by a tenant of the landlord kicked the child. This court held that summary judgment was appropriate because there was no showing that the landlord knew or had reason to know of the mule's dangerous propensity. Rather, like all mules, the mule which kicked the child was simply "not to be trusted because mules are unpredictable." *Id.* at 426, 646 P.2d at 311.

*Brady* briefly discussed the California decision of *Uccello v. Laudenslayer*, 118 Cal.Rptr. 741, 44 Cal.App.3d 508 (App. 1975). In *Uccello*, a California appellate court held that a landlord owes a duty of care to third persons when the landlord has actual knowledge of the presence of a dangerous animal on rented premises, has the right to remove the animal by retaking possession of the premises, and fails to take any action. In that case, the Capell family had rented a home from the landlord. The Capells owned a large German shepherd dog. Evidence existed that the landlord was well aware of the dog and its dangerous propensity because while the landlord lived in the neighborhood during the late summer of 1970, the Capells' dog attacked and bit a man who lived across the street from them. Evidence also existed that during the July Fourth weekend of 1971, the Capells' dog attacked and bit a child while the Capells were on vacation. Upon the Capells' return from their vacation, on July 7, 1971, their dog attacked and

seriously injured five-year-old Juliana Uccello, a visitor to the Capells' residence.[2] On these facts, the California Court of Appeals held that the trial court erroneously dismissed the child's suit against the Capells' landlord. In so ruling, the court discussed the general rule:

Historically, the public policy of this state generally has precluded a landlord's liability for injuries to his tenant or his tenant's invitees from a dangerous condition on the premises which comes into existence after the tenant has taken possession. This is true even though by the exercise of reasonable diligence the landlord might have discovered the condition.

118 Cal.Rptr. at 745, 44 Cal.App.3d at 510. See also, *Restatement (Second) of Torts* §§ 355 *et seq.* (1965). The court also stated that no duty of care is owed by a landlord to a third party injured by a tenant's dog absent actual knowledge of the dog and its dangerous propensities. 118 Cal.Rptr. at 745, 44 Cal.App.3d at 511.

In *Lundy v. California Realty*, 216 Cal. Rptr. 575, 170 Cal.App.3d 813 (1985), a case similar to the one before this court, a California appellate court followed *Uccello* and affirmed summary judgment for the property owners. In that case, the plaintiff was injured when he jumped over a fence to escape the tenant's German shepherd dog. The property owners' only knowledge of the dog was from the rental agreement, which allowed the tenant to have a "Shepard [sic] Dog Named Thunder" on the premises. The plaintiff argued that the property owners had knowledge of the "dangerous propensities" of the dog because they knew the tenant had a German shepherd, and "anyone knows that a hundred-pound German shepherd is going to chase and attack any stranger coming on the property unless restrained." *Id.* at 580, 170 Cal.App.3d at 821. The court rejected this argument, stating that nothing in the record indicated that the property owners knew the size or age of the dog, and the court was unwilling to take judicial

---

**2.** Even after this attack, the landlord permitted the Capells to keep the dog. On November 11, 1971, the dog attacked the Capells' daughter, who required hospitalization.

notice that all German shepherds are dangerous. In the matter before us, there is no evidence that the Chavezes had actual knowledge that the Diazes were maintaining pit bull dogs at their residence.[3]

■ The Diazes also maintain that even if the Chavezes lacked actual knowledge of the presence of the pit bulls, the presence of the pit bull dogs was something easily discoverable by the Chavezes had they exercised their right to inspect the premises granted by the terms of the lease agreement. The right to inspect the premises did not create a duty on the part of the Chavezes to exercise that right, particularly when there was no evidence of any notice to the Chavezes of the existence of a dog with dangerous propensities being maintained on the premises. *Prosser and Keeton on Torts* § 63 at 434 (5th ed., 1984) states:

> When land is leased to a tenant, the law of property regards the lease as equivalent to a sale of the premises for the term. The lessee acquires an estate in the land, and becomes for the time being both owner and occupier, subject to all of the responsibilities of one in possession, to those who enter upon the land and those outside of its boundaries.
>
> \* \* \* \* \* \*
>
> Consequently, the traditional common law rule has been that [the landlord] is under no obligation to anyone to look after the premises or to keep them in repair, and is not responsible, either to persons injured on or off the land for conditions which develop or are created by the tenant after possession has been transferred. Neither is [the landlord] held responsible, in general, for activities

which the tenant carries on upon the land after such transfer, even when they create a nuisance.

The trial court properly granted summary judgment in favor of the Chavezes.

## AWARD OF ATTORNEYS' FEES

■ The trial court awarded the Chavezes' attorneys' fees pursuant to A.R.S. § 12–341.01. Attorneys' fees arising from actions sounding in tort are awardable pursuant to A.R.S. § 12–341.01 if "the cause of action in tort could not exist *but for* the breach of contract." *Sparks v. Republic National Life Ins. Co.*, 132 Ariz. 529, 543, 647 P.2d 1127, 1141, *cert. denied*, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982) (emphasis supplied). In the matter before us, the Chavezes' liability to the plaintiffs, if it existed at all, arose from tort and not contract. Although it is increasingly difficult to distinguish between tort and contract liability, the distinction was clarified in *Barmat v. John and Jane Doe Partners A–D*, 155 Ariz. 515, 523, 747 P.2d 1214, 1218 (1987), as follows:

> Basically, contract law consists of enforcing the intention of the parties manifested through promises expressly made or implied from conduct.
>
> \* \* \* \* \* \*
>
> Duties that are essentially contractual in nature, however, are generally owed only to the contracting parties.

*See also Morris v. Achen Construction Co., Inc.*, 155 Ariz. 512, 514, 747 P.2d 1211, 1213 (1987). Although the Chavezes suggest that the core of the plaintiffs' theory of the Chavezes' liability is the right of the Chavezes to inspect the Diazes' premises as

---

**3.** As evidence of the innate dangerous propensity of pit bull terriers, plaintiffs submitted an article prepared by the Arizona Humane Society. It refers to the use of pit bulls by the ancient Romans and the Seventeenth Century English "sport" of bull baiting, in which a bull was tethered in a ring and pit bull dogs were released to fight the bull. The article describes the tremendous strength of the jaws of pit bulls and the powerful body muscles. It further states:

> Pit bulls are unique because they are the only animal, other than humans, that will attack

their own kind for sport and fight to the death. Most dogs give warning signs before they attack; they growl, bark and bear [sic] their teeth. Pit bulls usually give no such warnings, therefore, it is often difficult to predict when they will attack ... the pit bull, like many other animals has a natural instinct to attack any agressor. However, they do not stop once they have proven their dominance. The attack will usually continue until the dog is separated from its victim or the victim flees or is dead.

provided for under the lease agreement, it is clear that this theory represents but another way to impose tort liability upon the Chavezes.

Because attorneys' fees should not have been awarded to the Chavezes pursuant to A.R.S. § 12–341.01(A), this portion of the trial court's order is reversed. In all other respects, the judgment is affirmed.

LACAGNINA, C.J., and FERNANDEZ, J., concur.