JOYCE MCCULLOUGH, AS MOTHER AND NEXT FRIEND OF JAMIE
MCCULLOUGH, A MINOR CHILD, APPELLANT, V. RICHARD BOZARTH
AND SHERON BOZARTH, APPELLEES.
442 N.W.2d 201

Filed June 30, 1989.   No. 87-954.

Thomas C. Lauritsen and Thomas M. Houston, of
Andersen, Berkshire, Lauritsen & Brower, for appellant.

Richard C. Gordon and Susan Andersen Anderson, of
Walentine, O'Toole, McQuillan & Gordon, for appellees.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ.,
and MCGINN, D.J.

HASTINGS, C.J.

Joyce McCullough, mother and next friend of Jamie McCullough, a minor, brought this action against defendants-appellees, Richard and Sheron Bozarth, for injuries suffered by Jamie as the result of a dogbite which he sustained on March 20, 1985. At that time Jamie was approximately 7 years of age. Plaintiff alleged negligence and strict liability on the part of the defendants as owners and landlords of a residential property in failing to require the tenants to remove the dog, a pit bull terrier, after acquiring knowledge of the dog's vicious propensities; in failing to evict the tenants after acquiring such knowledge; and in failing to require the tenants to confine the dog in a secure place.

The district court sustained the defendants' motion for summary judgment and dismissed plaintiff's action. Plaintiff has appealed, alleging as error that there were disputed issues of fact as to (1) whether the dog was purchased as a pet or as a guard dog, (2) whether the tenants' house was used for the benefit of the defendants' adjacent business, (3) whether defendants had actual knowledge that a dangerous condition existed on the premises, (4) whether defendants had knowledge of the vicious propensities of a pit bull dog, (5) whether defendants had control over the pit bull dog and/or the premises, and (6) whether plaintiff had a cause of action against a landlord who failed to remedy a dangerous condition on the premises or who allowed it to continue. We affirm.

Summary judgment is an extreme remedy and should be awarded only when an issue is clear beyond all doubt. *Schroer v. Synowiecki*, 231 Neb. 168, 435 N.W.2d 875 (1989).

A summary judgment is properly granted when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or the ultimate inferences deducible from such fact or facts and that the moving party is entitled to judgment as a matter of law. *Hall v. Phillips*, 231 Neb. 269, 436 N.W.2d 139 (1989).

In reviewing an order granting a summary judgment, this court must take the view of the evidence most favorable to the party against whom it operates and give that party the benefit

of all favorable inferences which may be drawn from the evidence. *Pioneer Animal Clinic v. Garry*, 231 Neb. 349, 436 N.W.2d 184 (1989).

The defendants are husband and wife and are the owners of a house at 6612 North 60th Street in Omaha. Their daughter, Lynn Snoza, and her husband, Don, were living in the house and renting it from the defendants. Apparently, there was a written lease for 12 months at a time, but a copy of the lease was not in evidence. The rental was $450 per month.

The defendant Richard Bozarth is a self-employed mechanic, and he worked in a garage beneath another house on the premises, approximately 50 feet from the house leased by the Snozas. Occasionally, although not on a regular basis, the defendant had his business calls forwarded to the Snoza residence. Also occasionally, the defendant's business customers would drop off or pick up their keys at the Snozas', and on rare occasions, customers would pay their bills at the Snozas'. However, neither of the Snozas worked for the defendant's business.

The Snozas obtained a pit bull terrier in early spring 1984. The defendant would see the dog on a near-daily basis when he would visit his daughter in the morning upon coming to work. It was his understanding that Don Snoza bought the dog as a pet for his children.

Deposition testimony disclosed that the Snozas' main concern upon purchasing the dog was whether it would make a suitable house pet, and there was no intention to use it as a watchdog. However, Harry McCullough, who is Jamie's father and was a "best friend" of Don Snoza's, in his deposition stated Snoza had told him that because of the neighborhood, he wanted a dog that could protect his family. There is no indication that the defendants knew of this statement.

On March 20, 1985, Harry McCullough and Jamie were visiting at the Snozas' after Jamie and two of the Snoza children had been flying kites together. Jamie, Lynn Snoza, and the Snoza children went inside the Snoza house to get a drink of water. The dog was penned up in the "mud room," with a retractable child's gate and two folding chairs to keep it in. The purpose of this arrangement, according to the Snozas, was to

keep the dog from coming out in the living room and sleeping on the couch. The dog got loose from the mud room, ran toward Jamie, and bit him on the hand and face.

Richard Bozarth testified by deposition that he had never seen the dog snarl or growl and that before the biting incident, "there was not hint of any kind of a mean or vicious action from that dog." He also testified that on many occasions the dog would come down to his garage. He was not aware of any reputation of pit bull dogs. The only evidence of any nature as to the dangerous propensities of the pit bull terrier breed was an excerpt from a newspaper article published on March 17, 1986, almost 1 year after this incident.

Lynn Snoza stated that although the dog occasionally barked, she had never seen it growl or bother anybody. She also stated that before the biting incident, she was not aware of any vicious propensities of the pit bull breed, nor had she ever discussed pit bulls or her dog in particular with her father before the biting incident. She admitted that she had placed a sign on the back door, which she herself had made, stating, "Beware of Dog; Use Front Door." She also agreed that her father had seen the sign and asked about it, and she told him she was tired of people coming to the back door and opening the door, allowing the dog to get out, so that she would have to go retrieve it.

In Don Snoza's deposition he stated that when he bought the dog, he asked the seller if the dog would be vicious, and he was assured that if he "treat[ed] it with respect," it would be a docile house dog. He did not discuss the pit bull breed per se with the seller, nor did he ever discuss pit bulls with Richard Bozarth. He said that until the biting incident, the dog was a "lap dog," a "[v]ery calm animal" that never growled or barked in a menacing manner.

However, Harry McCullough stated by deposition that Don Snoza had related an incident to him in which the dog had gotten loose and scared a little girl in the neighborhood. However, the record contains no details of that incident, what the dog did, or what the little girl did. McCullough did agree that he had had contact with the dog before, when, as he said, "the dog figured you were there to pet it, because it would just

come up and just light on your leg. It would sit on your foot. You know, this dog wanted to be petted, and until you did that, this dog wasn't going to give up." In answer to a question as to whether he would call the dog a friendly dog, he answered, "If you know the dog and it knew you, yeah."

The record is not entirely clear as to whether and under what circumstances the dog was kept on a chain. Richard Bozarth himself stated that the dog was allowed to run loose, although when it was first being trained to stay in its own yard, it was tethered by a 1/4-inch chain. Don Snoza conceded that when it was outside it was usually chained to a post with a 1/4-inch chain. Harry McCullough testified in his deposition that when the dog was outside on its chain, it would bark and lunge at anyone who knocked on the Snozas' back door.

There was absolutely nothing in the record about the terms of the lease between the defendants and their daughter and son-in-law regarding whether permission was required of the landlord to permit the tenant to harbor a dog, whether there was any right on the part of the landlord to evict the tenants if they did keep a dog, or any other rights or obligations on the part of either party to the lease agreement other than the payment of rent. However, the dog was purchased after the beginning of the original lease period.

Neb. Rev. Stat. § 54-601 (Reissue 1988) provides that "the owner or owners of any dog or dogs shall be liable for any and all damages that may accrue (1) to any person, other than a trespasser, by reason of having been bitten by any such dog or dogs . . . ." The dog's *owner* is thus strictly liable for injuries inflicted by the dog, without any proof that the owner knew of the dog's dangerous propensities. See *Paulsen v. Courtney*, 202 Neb. 791, 277 N.W.2d 233 (1979).

However, this action is not against the dog owner, but against the owners of the leased property, and the statute providing for strict liability does not apply. In *Parr v. Head*, 442 So. 2d 1234 (La. App. 1983), the court considered whether the statutory strict liability of the dog owner could "attach" to the landlord, and concluded that it could not. The court reasoned that while the owner of the dog derives some use or pleasure from the animal and should thus bear the risk of loss created by the

ownership of the dog, the landlord derives no such benefit from the existence of the risk. That court did not rule out the possibility of a negligence action against the landlord, however.

Because this issue has never been considered in Nebraska, it is necessary to examine the decisions of other states.

The New York courts have considered several cases in which the plaintiff sought to have liability placed on the landlord. One of the first of these cases was *Siegel v. 1536-46 St. John's Place Corp.*, 184 Misc. 1053, 57 N.Y.S.2d 473 (1945), in which the plaintiff was bitten by a dog in a common stairway in the main hall of the defendant's apartment building. The court emphasized that the landlord had prior notice of the dog's presence and its trend toward viciousness and possessed the power to expel the dog and its owner. That case is distinguishable, however, because the landlord's liability was premised upon his continuing duty to keep the common ways of the property in a reasonably safe condition. See, also, *Linebaugh By and Through Linebaugh v. Hyndman*, 213 N.J. Super. 117, 516 A.2d 638 (1986), in which the New Jersey court held that where the plaintiff was bitten by a tenant's dog while playing in a common area shared by the tenants of the defendants' house, the landlords could be held liable, and thus the summary judgment in their favor was improper. However, again the defendants were aware of the dog and its vicious propensities and thus, the court held, harm to a third person was foreseeable.

In *Strunk v. Zoltanski*, 62 N.Y.2d 572, 468 N.E.2d 13, 479 N.Y.S.2d 175 (1984), the landlord, who knew of the vicious dog *prior* to entering into the lease agreement, was found to have created the foreseeable risk of harm to another. The court announced the following rule:

> A landlord who, with knowledge that a prospective tenant has a vicious dog which will be kept on the premises, nonetheless leases the premises to such tenant without taking reasonable measures, by pertinent provisions in the lease or otherwise, to protect persons who might be on the premises from being attacked by the dog may be held liable to a person who while thereafter on the premises is bitten by the dog.

*Id*. at 573-74, 468 N.E.2d at 14, 479 N.Y.S.2d at 176. Again, that case may be distinguished on the facts.

Two recent New York cases reiterated the factors which the New York courts have found necessary to impose liability on the landlord. In *Meyers v. Haskins,* 140 A.D.2d 923, 528 N.Y.S.2d 738 (1988), the court stated in effect that to establish liability, it must be shown that the landlord knew of the dangerous animal's presence and had control of the premises or other capability to remove or confine the animal.

In *Cronin v. Chrosniak,* 145 A.D.2d 905, 536 N.Y.S.2d 287 (1988), another case involving a pit bull, the court stated the rule that "[a] landlord not in possession of the premises is usually not liable for injuries inflicted by an animal owned or harbored by a tenant . . . ." *Id.* at 905-06, 536 N.Y.S.2d at 287, citing *Zwinge v. Love,* 37 A.D.2d 874, 325 N.Y.S.2d 107 (1971), and *Georgianna v. Gizzy,* 126 Misc. 2d 766, 483 N.Y.S.2d 892 (1984). However, the court went on to cite the rule set forth in *Strunk v. Zoltanski, supra,* that if during the term of the leasehold a landlord becomes aware of the fact that his tenant is harboring an animal with vicious propensities, he owes a duty to protect third persons from injury *if he had control of the premises or other capability to remove or confine the animal.*

In *Vigil by and through Vigil v. Payne,* 725 P.2d 1155 (Colo. App. 1986), the Colorado court also followed *Strunk v. Zoltanski, supra,* in allowing recovery for an attack against the 6-year-old plaintiff by two Chow dogs owned by the defendants' lessees. The landlords knew of the dogs' presence and of their vicious propensities before entering into the rental agreement. The court held that this prior knowledge was sufficient to establish a duty of care on their part.

> We therefore adopt the rule that where, as here, a landlord has actual knowledge that a tenant owns an animal whose vicious actions have created a clear potential for injury, the landlord has a duty to take reasonable precautions to protect third persons from the animal. However, we specifically limit that duty of care to those instances in which the landlord has actual knowledge of the vicious actions of the animal before entering into a rental agreement with the animal's owner and nevertheless

subsequently performs the affirmative act of entering into a rental agreement with the animal's owner.
725 P.2d at 1157.

The Florida courts have on several occasions considered the issue of the landlord's liability in such cases. In *Christie v. Anchorage Yacht Haven, Inc.*, 287 So. 2d 359 (Fla. App. 1973), the plaintiff was thrown from his bicycle when attacked by a large German shepherd, which was kept on the premises owned by the defendant corporation. The cyclist was traveling on a path which persons used regularly and with the owner's implied permission. The court held that the directed verdict in the corporation's favor should not have been granted, as it was possible for the jury to find that the corporation had negligently failed to warn the cyclist of a known dangerous condition on the property. But see, *O'Steen v. Kemmerer*, 344 So. 2d 313 (Fla. App. 1977) (in which the court refused to extend *Christie* to a situation in which the plaintiff was injured on her own property by wild animals kept on the landowner's adjacent property by his employee, absent any interest in or use of the animals by the landowner); *Allen v. Enslow*, 423 So. 2d 616 (Fla. App. 1982) (in which the court refused to extend *Christie* to hold a landlord liable to one injured on the street by a tenant's dog).

In *Anderson v. Walthal*, 468 So. 2d 291 (Fla. App. 1985), the court held that under the particular facts of the case, the defendant did not need to have actual knowledge of the dog to be held liable. However, that case is distinguishable from the instant case on the facts. There, the defendant owned an industrial park, which the plaintiff had entered to inquire about leasing a miniwarehouse for storage. The plaintiff was attacked by a pit bull owned by one of the defendant's tenants. The court found that if the jury concluded that the agent and manager of the business, to whom the defendant delegated authority for the day-to-day operations of the business, had actual knowledge of the dog and its vicious propensities, this knowledge could be imputed to the defendant under agency principles.

*Vasques by and through Rocha v. Lopez*, 509 So. 2d 1241 (Fla. App. 1987), reversed the granting of a directed verdict for the landlord under facts similar to the instant case, that is,

children of the landlord occupied the premises under a lease from the owners. The plaintiff, a child, was attacked by a pit bull owned by the tenants. The landlord's sister collected rent twice a month and the landlord himself visited the premises at least twice a year. From this, the plaintiff relied on *Ward v. Young*, 504 So. 2d 528 (Fla. App. 1987), *Anderson v. Walthal, supra*, and *Strunk v. Zoltanski*, 96 A.D.2d 1074, 466 N.Y.S.2d 716 (1983), *aff'd* 62 N.Y.2d 572, 468 N.E.2d 13, 479 N.Y.S.2d 175 (1984), in asserting that because the jury could infer *actual* knowledge by the landlord and *control* over the premises, the directed verdict for the landlord was improper.

The *Vasques* court relied in part on *Uccello v. Laudenslayer*, 44 Cal. App. 3d 504, 118 Cal. Rptr. 741 (1975), in which the California court was presented with a question of first impression which it answered in the same way as the New York, Colorado, and Florida courts did: "We hold that a duty of care arises when the landlord has *actual knowledge* of the presence of the dangerous animal and when he has the *right to remove the animal by retaking possession of the premises*." (Emphasis supplied). *Id*. at 507, 118 Cal. Rptr. at 743.

The California court concentrated its analysis on the fact that the landlord had the power to eliminate the dangerous condition and prevent the injury. Where the landlord is made aware of the presence of a dangerous animal on the premises, he has a duty to act: "To permit a landlord in such a situation to sit idly by in the face of the known danger to others must be deemed socially and legally unacceptable." *Id*. at 512, 118 Cal. Rptr. at 746. Such power is manifested by the landlord's right to terminate the tenancy and take possession of the premises unless the tenant gets rid of the dog.

The court also emphasized that the duty of care will not be imposed on the landlord unless it is proved that he knew of the dog and its dangerous propensities. Moreover, this knowledge must take the form of actual knowledge, not mere constructive knowledge. In a footnote, the court explained that actual knowledge may be shown by direct or circumstantial evidence which is not based on speculation or conjecture. "Only where the circumstances are such that the defendant 'must have known' and not 'should have known' will an inference of actual

knowledge be permitted." *Id*. at 514 n.4, 118 Cal. Rptr. at 748 n.4.

Two cases relied on extensively by the plaintiff in her brief can be distinguished by their facts. In *Alaskan Village, Inc. v. Smalley*, 720 P.2d 945 (Alaska 1986), the court found the corporate owner of a trailer park liable when its tenant's pit bulls mauled the plaintiff. However, the court's finding of liability was specifically grounded on the defendant's failure to enforce the park's rules, by which the defendant had undertaken to control vicious dogs in the trailer park by inserting a provision in the lease prohibiting tenants from keeping vicious dogs.

*Arrington Funeral Home v. Taylor*, 474 S.W.2d 299 (Tex. Civ. App. 1971), while somewhat similar to the present case, is still distinguishable on its facts. The plaintiff sued the operator of a funeral home when she was bitten by a dog owned by the defendant's employee. The court held that the defendant could be held liable for the injuries because the defendant had the right to control the use of the premises. The house in which the employee lived was connected to the funeral home. The house, including all appliances and furniture, was furnished to the employee as part of his salary, and the utilities were paid by the defendant. The employee received his mail through the funeral home's main office, and the phones in the funeral home and the house rang simultaneously so that the employee could answer the phone at the house when he was on duty. Under these circumstances, the court concluded that the relationship between the funeral home and the employee constituted more than a typical landlord-tenant relationship.

> We hold that a corporation is liable to a person injured by a vicious dog on premises owned, controlled and partially used in the furtherance of the business of the corporation, where the corporation has given its permission and consent to its employee to keep and harbor the dog on such premises.

*Id*. at 302.

In New York, which has recognized a common-law cause of action against the landlord who knows of the dangerous animal's presence and has the right to control the premises, see

*Strunk v. Zoltanski*, 62 N.Y.2d 572, 468 N.E.2d 13, 479 N.Y.S.2d 175 (1984), an appellate division court affirmed a summary judgment dismissing the complaint against a landlord who had never exercised control over the tenant's dog and was unaware of the animal's presence on the property. *Payne v. Pavese*, 98 A.D.2d 879, 470 N.Y.S.2d 860 (1983).

In *Georgianna v. Gizzy*, 126 Misc. 2d 766, 483 N.Y.S.2d 892 (1984), the court held that summary judgment was proper where the landlords had no actual knowledge of the vicious propensities of the dog. Similarly, in *Rico v. Cleary*, 126 A.D.2d 714, 511 N.Y.S.2d 126 (1987), the court held that since the defendant landlord had no prior knowledge of the dog's vicious propensities, summary judgment in favor of the defendant was proper.

The Washington Court of Appeals did not reach the issue of whether the landlords had the right to retake possession of the premises or remove the animal in *Shafer v. Beyers*, 26 Wash. App. 442, 613 P.2d 554 (1980), in view of its finding that the landlords did not know that the dog had vicious propensities.

In a recent case from Illinois, the court also concluded that dogs are presumed tame and docile, and to sustain a cause of action against the landlord, the plaintiff must affirmatively prove that the landlord knew that the dog in question was otherwise. See *Lucas v. Kriska*, 168 Ill. App. 3d 317, 522 N.E.2d 736 (1988).

In *Szkodzinski v Griffin*, 171 Mich. App. 711, 431 N.W.2d 51 (1988), the 6-year-old plaintiff was bitten when an akita dog owned by the defendant's residential tenant attacked him when he entered the premises to retrieve his ball. The court first noted that the statute providing strict liability for the owner of the dog was inapplicable to the landlord. The court then cited *Strunk v. Zoltanski, supra*, in observing that the defendant landlord could be held liable on a common-law theory, but only if he knew of the dog's vicious nature.

We hold that as a general rule, a landlord is liable for injuries caused by the attack of a tenant's dog only where the landlord had actual knowledge of the dangerous propensities of the dog and where the landlord, having that knowledge, nevertheless leased the premises to the dog's owner or, by the terms of the

lease, had the power to control the harboring of a dog by the tenant and neglected to exercise that power.

In the instant case, the landlord defendants deny that they knew of the dangerous propensities of the particular dog or breed of dog, and the plaintiff has failed to dispute this fact. Where the moving party shows that if the evidence were uncontroverted at trial such party would be entitled to judgment as a matter of law, that showing shifts the burden of producing evidence as to a factual issue to the party opposing the motion. Failure of the party against whom the motion has been made to meet that burden will result in summary judgment. *Reifschneider v. Nebraska Methodist Hosp.*, 222 Neb. 782, 387 N.W.2d 486 (1986).

Additionally, the plaintiff has failed to allege that the defendants had sufficient control over the premises so as to have been able to require the removal of the dog from the premises. Therefore, that issue is not presented for determination.

There is no genuine issue concerning any material fact or the ultimate inferences deducible from such fact or facts, and the defendants were entitled to judgment as a matter of law. The judgment of the district court is affirmed.

AFFIRMED.

FAHRNBRUCH, J., not participating.