2001 ND 167

**Bonnie TWOGOOD, Plaintiff and Appellant**

**v.**

**Pat WENTZ, Defendant,**

**Douglas N. Ostrom, Mar Jean Selby, and Betty Jaegar, Defendants and Appellees.**

No. 20010106.

Supreme Court of North Dakota.

Oct. 16, 2001.

David D. Schweigert, Bucklin, Klemin & McBride, Bismarck, for plaintiff and appellant.

Shawnda R. Reid (argued) and Jerry W. Evenson (on brief), Zuger Kirmis & Smith, Bismarck, for defendants and appellees.

KAPSNER, Justice.

[¶ 1] Bonnie Twogood appeals a summary judgment dismissing her negligence claim against defendants Douglas N. Ostrom, Mar Jean Selby, and Betty Jaegar (collectively, the "landlords"). In addition to granting summary judgment, the trial court assessed costs in the amount of $1300.00 against Twogood. Twogood paid this cost judgment. Because the cost judgment did not go to the merits of the case and was paid under duress, we find the satisfaction of the cost judgment did not waive Twogood's right to appeal. Finding no duty on the part of the landlords, we affirm the summary judgment.

I

[¶ 2] On July 1, 1998, Twogood entered residential property owned by the landlords in Turtle Lake to perform her duties as a utilities meter reader. The property was rented to a fourth defendant not involved in this appeal, Pat Wentz. While on the property, Twogood was bitten on her lower left leg by a dog owned by Wentz. Twogood brought suit against Wentz and the landlords, alleging negligence in breaching a duty to exercise reasonable care.

[¶ 3] The landlords moved for summary judgment, arguing they did not owe a duty to Twogood to protect her from injuries caused by Wentz's dog. They filed affidavits with their motion stating they did not know Wentz kept a dog on the property, and Wentz himself filed an affidavit asserting he had not seen, or had any knowledge of, any vicious propensities in the dog. Twogood did not dispute these statements in the affidavits. The trial court granted summary judgment to the landlords, reasoning they were neither aware Wentz kept a dog on the premises nor did they have reason to know of any vicious propensities of the dog. In addi-

tion to granting summary judgment, the trial court also assessed costs in the amount of $1300.00 against Twogood.

[¶ 4] In March of 2001 the cost judgment was transferred to Ward County, the county of Twogood's residence, and an execution was issued to the Ward County Sheriff's Department. On April 4, 2001, Twogood dismissed her case against Wentz following settlement of her claim against him. On April 23, 2001, Twogood satisfied the cost judgment levied against her. On this same day, she appealed the trial court's summary judgment order.

II

[¶ 5] A party who voluntarily pays a judgment waives the right to appeal from the judgment. *Lyon v. Ford Motor Co.*, 2000 ND 12, ¶ 13, 604 N.W.2d 453. Twogood argues the satisfaction of the $1300.00 cost judgment was paid under duress after the initiation of collection procedures. The landlords argue Twogood was given ample time to take action other than paying the judgment and that the judgment was voluntarily satisfied. While voluntary payment of a judgment waives the right to appeal, "payment of a judgment under coercion or duress is not a waiver of the right to appeal." *Id.* at ¶ 14. The question of whether a judgment has been voluntarily paid and satisfied "depends on the facts and circumstances of the particular case," and "the burden is on the party moving to dismiss the appeal to show the judgment was voluntarily paid and satisfied." *Id.* Where the only showing is that the judgment has been paid, "a presumption arises that the payment was voluntarily." *Id.*

[¶ 6] We have stated "payment of a judgment under duress imposed by execution is not voluntary." *Dakota Northwestern Bank National Ass'n v. Schollmeyer*, 311 N.W.2d 164, 166 (N.D.1981) (discuss-

ing *Grady v. Hansel*, 57 N.D. 722, 223 N.W. 937 (1929)). In *Grady*, the judgment was paid "to the sheriff armed with an execution and who made return on the execution." *Grady*, at 938. Under these circumstances we held payment cannot be said to be voluntary so as to waive the right of appeal. *Id.* Similarly, in *Schollmeyer* we held payment of a judgment is not voluntary when proceeds of a public auction, conducted in accordance with an agreement signed after a special execution had been issued, are used to satisfy the judgment. *Schollmeyer*, at 166.

[¶ 7] Although not argued by the parties, a separate basis for holding Twogood has not waived her right to appeal is our prior caselaw differentiating between merits and costs of a case. Twogood paid a cost judgment after an execution was issued to the Ward County Sheriff's Department. "[T]he payment of costs which are only incidental to the judgment and do not in any way go to the merits of the case will not defeat the right to appeal." *St. Vincent's Nursing Home v. Department of Labor*, 168 N.W.2d 265, 266 (N.D.1969). A " 'judgment consists of two parts,—one on the merits, and the other for the costs. The payment and satisfaction of the latter is no bar to error proceeding to obtain the reversal' of the former." *Carroll v. Ryan*, 79 N.D. 366, 56 N.W.2d 682, 684 (1953) (quoting *Woodward v. State ex rel. Thomssen*, 58 Neb. 598, 79 N.W. 164, 164 (1899)).

[¶ 8] In *Carroll*, a dismissal was entered in favor of the defendant and costs were assessed against the plaintiff in the amount of $147.60. *Carroll*, 56 N.W.2d at 682. The plaintiff moved for a new trial, which the defendant sought to dismiss on the basis of the plaintiff having already paid the costs. *Id.* at 684. We denied the motion to dismiss, reasoning the principal judgment was for the dismissal of the ac-

tion, not the assessment of costs, and therefore waiver of the right to appeal the principal judgment had not occurred. *Id.* *Carroll* is similar to the current situation. The $1300.00 paid by Twogood was only an order for costs. The costs assessed in the current case did not go to the merits of the case. *See id.* Therefore, payment and satisfaction of a cost judgment does not bar a proceeding to reverse a summary judgment on the merits. *See St. Vincent's Nursing Home*, 168 N.W.2d at 266.

III

[¶ 9] Twogood argues the trial court erred in granting summary judgment for the landlords because they owe her a duty of care to act as a reasonable person in the management of leased property. The landlords argue summary judgment was proper because they do not owe a duty to Twogood since they neither controlled the property nor had knowledge of the presence or vicious propensities of the dog.

[¶ 10] We review this portion of the appeal under our standards for summary judgment, which promptly resolves a controversy on the merits without a trial if the evidence demonstrates the nonexistence of a genuine issue of material fact, or inferences to be drawn from undisputed material facts, and if the evidence shows a party is entitled to judgment as a matter of law. N.D.R.Civ.P. 56(c); *Fetch v. Quam*, 2001 ND 48, ¶ 8, 623 N.W.2d 357. "Issues of fact may become issues of law if reasonable persons could reach only one conclusion from the facts." *Fetch*, at ¶ 8. Even undisputed facts do not justify summary judgment if reasonable differences of opinion exist as to the inferences to be drawn from those facts. *Helbling v. Helbling*, 267 N.W.2d 559, 561 (N.D.1978).

[¶ 11] Whether a trial judge properly granted summary judgment is a

question of law which we review de novo on the entire record. *Fetch*, 2001 ND 48, ¶ 8, 623 N.W.2d 357. The party seeking summary judgment bears the initial burden of showing no genuine dispute regarding a material fact exists. *Id.* at ¶ 9. We review the evidence in the light most favorable to the party opposing the summary judgment motion. *Id.* at ¶ 8. The opposing party, however, may not simply rely on unsupported and conclusory allegations or denials in the pleadings. Instead, the party must set forth specific facts illustrating there is a genuine issue for trial. N.D.R.Civ.P. 56(e). We have held summary judgment should rarely be granted in negligence cases. *Helbling*, 267 N.W.2d at 561. By their very nature, negligence claims are usually poor subjects for summary judgment. *Latendresse v. Latendresse*, 294 N.W.2d 742, 748 (N.D.1980).

[¶ 12] To establish her cause of action for negligence, Twogood must show the landlords had a duty to protect her from injury. *See Rogstad v. Dakota Gasification Co.*, 2001 ND 54, ¶ 12, 623 N.W.2d 382. "We have stated negligence consists of a duty on the part of an allegedly negligent party to protect the plaintiff from injury, a failure to discharge the duty, and a resulting injury proximately caused by the breach of the duty." *Id.* If a duty on the part of the landlords does not exist, neither does negligence. *See id.* Generally, whether a defendant owes a plaintiff a duty of care is a preliminary question of law for the court to determine, but if the existence of a duty depends on resolving factual issues, the trier of fact must ascertain the facts. *Pechtl v. Conoco, Inc.*, 1997 ND 161, ¶ 7, 567 N.W.2d 813. Twogood urges this Court to hold the landlords to the standard of a reasonable person who is a landlord.

[¶ 13] Under our premises liability law, a property owner must have control over the property where the injury occurred in order to find the owner owed a duty to an injured party. *Doan v. City of Bismarck*, 2001 ND 152, ¶ 13, 632 N.W.2d 815. Before a duty of care is owed, "it must be demonstrated the defendant had control of the premises and, therefore, an opportunity to observe any duty." *Stanley v. Turtle Mountain Gas & Oil, Inc.*, 1997 ND 169, ¶ 9, 567 N.W.2d 345. "Thus, control is an essential prerequisite for imposition of premises liability." *Doan*, at ¶ 13. In the current case, Twogood has not set forth any facts illustrating the landlords had control of the property. She argued the landlords exerted a degree of control over the property because the lease agreement required Wentz to pay for all utilities. This however is not indicative of control over a premises. The landlords did not require Wentz to use a certain type of utility, or any utilities at all. Wentz merely had to pay for whatever he decided to use. The landlords did not control Wentz's utilities consumption.

[¶ 14] Twogood has not alleged the landlords were in physical control of the property. At the time of the summary judgment motion, none of the landlords resided in North Dakota. Ostrom resided in Arizona, Selby in Georgia, and Jaegar in Montana. The lease agreement was entered into by long distance telephone call between Ostrom and Wentz. Selby and Jaegar did not have knowledge of the terms of the lease agreement. Ostrom stated he entered into a verbal rental agreement with Wentz which transferred control and possession to him. Twogood has not disputed any of these statements.

[¶ 15] Property law "regards the lease as equivalent to a sale of the land for the term of the lease. The lessee acquires an estate in the land, and becomes for the time being the owner and occupier, subject to all of the liabilities of one in posses-

sion, . . . ." Restatement (Second) of Torts § 356 cmt. a (1965). Section 47–16–01, N.D.C.C., defines the leasing of real property as "a contract by which one gives to another the temporary possession and use of real property for reward and the latter agrees to return such possession to the former at a future time." N.D.C.C. § 47–16–01. Neither party to this appeal has alleged a valid lease did not exist between Wentz and the landlords. Thus, the landlords had transferred possession and control over the property to Wentz.

[¶ 16] While this jurisdiction has not yet dealt with the issue of a landlord's liability to a third person for injury by a tenant's dog, decisions from other jurisdictions are persuasive. The California Court of Appeal, when confronted with that question, held "a duty of care arises when the landlord has actual knowledge of the presence of the dangerous animal and when he has the right to remove the animal by retaking possession of the premises." *Uccello v. Laudenslayer*, 44 Cal.App.3d 504, 118 Cal.Rptr. 741, 743 (1975).

[¶ 17] In *Uccello*, Juliana Uccello was playing at a friend's house when that family's dog attacked and injured her. *Uccello*, 118 Cal.Rptr. at 743–44. The dog owners had entered into a month-to-month tenancy with Laudenslayer, the defendant landlord. *Id.* at 744. The trial court granted Laudenslayer's motion for a nonsuit at the conclusion of Uccello's opening statement. *Id.* at 743. The California Court of Appeal ultimately reversed the granting of a nonsuit, but did recognize "a landlord should not be held liable for injuries from conditions over which he has no control." *Id.* at 746. That exertion of control, from which a duty of care would flow, could not be present "without proof that [the landlord] knew of the dog and its dangerous propensities." *Id.* at 748. The amount of knowledge required to impose liability to a third person was "actual knowledge and not mere constructive knowledge," but "a landlord is under no duty to inspect the premises for the purpose of discovering the existence of a tenant's dangerous animal." *Id.*

[¶ 18] The Nebraska Supreme Court, in upholding a grant of summary judgment for the defendant landlord, held:

> a landlord is liable for injuries caused by the attack of a tenant's dog only where the landlord has actual knowledge of the dangerous propensities of the dog and where the landlord, having that knowledge, nevertheless leased the premises to the dog's owner or, by the terms of the lease, had the power to control the harboring of a dog by the tenant and neglected to exercise that power.

*McCullough v. Bozarth*, 232 Neb. 714, 442 N.W.2d 201, 208 (1989). In *Bozarth*, the defendant landlords owned a house which they rented to their daughter and her husband. *Id.* at 203. The tenants had a dog which bit the seven-year-old plaintiff. *Id.* at 204. The terms of the rental agreement were not clear as to whether the landlord could evict because of the presence of the dog, or as to any rights or obligations beyond the receipt of rent. *Id.* at 204–05. The dog was purchased after the beginning of the lease period, but the landlord was aware of the presence of the dog on the premises. *Id.* The grant of summary judgment was upheld because the plaintiff did not dispute either the defendant's denial of knowledge of dangerous propensities, or allege the defendants had sufficient control over the premises. *Id.* at 208.

[¶ 19] Similarly, the Indiana Court of Appeals held a plaintiff must demonstrate a landlord retained control over the property and had actual knowledge of the vicious propensities of a tenant's dog. *Goddard v. Weaver*, 558 N.E.2d 853, 854 (Ind.

Ct.App.1990). In affirming a trial court's grant of summary judgment, the Indiana appellate court first focused on the landlord's lack of control over the area where the plaintiff was attacked by the tenant's dog. *Id.* The Indiana court wrote "[b]ecause [the landlord] did not retain control over the property, he cannot be liable to [the plaintiff] for the injuries she sustained there." *Id.* The Indiana Court of Appeals then examined the landlord's knowledge of the tenant's dog: "[f]urthermore, even assuming [the landlord] had control over the property, it is clear from the record that he did not have actual knowledge of Lady's vicious propensities." *Id.* The court held "[i]n the absence of actual knowledge of the vicious propensities of a tenant's dog, a landlord owes no duty to third persons injured by the dog." *Id.*

[¶ 20] From these three cases, the general rule is that a landlord is not liable to a third person for an attack by a tenant's dog unless the landlord had control of the premises and knowledge of the vicious propensities of the dog. *See Uccello,* 118 Cal.Rptr. at 746–48; *Bozarth,* 442 N.W.2d at 208; *Goddard,* 558 N.E.2d at 854. Ostrom, Selby, and Jaegar have denied both control and knowledge, and the record is devoid of any facts to the contrary. Applying the rule to the facts in this case, the trial court correctly determined the landlords owed no duty to Twogood.

## IV

[¶ 21] Twogood's satisfaction of the cost judgment was only after an execution had been filed with the Ward County Sheriff's Department. Under the circumstances of this case, the payment was not voluntary so as to work a waiver of the right to appeal. Furthermore, the judgment was a cost judgment. The costs assessed did not relate to the merits of the

case. Therefore, satisfaction of a cost judgment does not bar a proceeding to reverse a summary judgment on the merits of a case.

[¶ 22] Twogood has been unable to set forth any specific facts illustrating the existence of a genuine issue for trial. She has not produced any facts which demonstrate the landlords were in control of the premises, nor has she produced facts which demonstrate the landlords had any knowledge of the dog's vicious propensities. The trial court did not err in concluding the landlords owed no duty of care to Twogood. We affirm the summary judgment.

[¶ 23] VANDE WALLE, C.J., and MARING, NEUMANN and SANDSTROM, JJ., concur.