LORI PLOWMAN, APPELLANT, V.
LAURIE PRATT ET AL., APPELLEES.
684 N.W.2d 28

Filed July 30, 2004.   No. S-02-1357.

G. Rosanna Moore, of the Law Offices of Ronald J. Palagi, P.C., for appellant.

Patricia McCormack, of Hillman, Forman, Nelsen, Childers & McCormack, and Michael W. Pirtle for appellee Joe Semin.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

PER CURIAM.

In 1998, Lori Plowman was attacked and injured by Laurie Pratt's pit bull terrier. Seeking compensation for her injuries, Plowman filed an action against Pratt and Pratt's landlord, Joe Semin. Semin moved for summary judgment, and the district court granted Semin's motion. The court, relying on our decision in *McCullough v. Bozarth*, 232 Neb. 714, 442 N.W.2d 201 (1989), in which we held that a landlord is liable for injuries caused by the attack of a tenant's dog only when the landlord has "actual knowledge" of the dangerous propensities of that dog, determined that Semin did not have actual knowledge of the dog's dangerous propensities. On appeal, Plowman asks us to overrule our decision in *Bozarth* and adopt a standard wherein a landlord is liable for the injuries caused by the attack of a tenant's dog if the landlord "knew or should have known" of the dog's dangerous propensities. Because we believe that *Bozarth* continues to represent the better rule, we decline to do so.

## FACTUAL AND PROCEDURAL HISTORY

At the time of the attack, Plowman was employed by the Metropolitan Utilities District (M.U.D.) as a meter reader in Omaha, Nebraska. Plowman's job required her to walk through certain assigned neighborhoods and record usage on gas and water meters. On December 2, 1998, Plowman was walking her route, reading meters. While in the yard of Pratt's neighbor, Plowman saw Pratt and her young daughter standing on their porch, and asked Pratt if she could come over and read the relevant meters. Pratt agreed, and Plowman began walking toward Pratt's house. At this time, Plowman noticed Pratt's dog. The dog, a 1½-year-old pit bull terrier, then jumped off the porch and began running toward Plowman. Pratt told Plowman not to worry because the dog was a puppy and would not do anything.

When the dog reached Plowman, it leapt toward her face. Plowman attempted to block the dog's attack with her right hand, and the dog bit Plowman's right hand, ripping a splint off Plowman's previously broken finger. The dog then attacked Plowman's left hand, pulling her onto the ground and dragging her toward Pratt's house. Screaming, Pratt ran toward Plowman. Eventually, Pratt was able to pull the dog off of Plowman and took it into the house. Plowman suffered serious injuries as a result of the attack and was taken to the hospital.

At the time of the attack, Pratt was renting the home she lived in from Semin. The rental agreement that Pratt signed prohibited pets on the premises without Semin's prior written consent. In November 1998, approximately 2 weeks prior to the attack, Pratt traveled to St. Joseph, Missouri, to pick up the dog. Pratt did not receive Semin's written consent concerning the dog prior to moving it into her home. In their deposition testimony, Pratt and her mother agreed that Pratt's mother called Semin, asking him if Pratt could temporarily house a dog until a permanent home for it could be found. According to the Pratts, Semin consented to the temporary arrangement. In his deposition, Semin did not remember receiving a call from Pratt's mother. However, Semin did acknowledge that he saw the dog while at the residence one day and stated that he understood that the dog would be living with Pratt on a temporary basis.

After the attack, Plowman sued Pratt, Semin, and M.U.D. Plowman alleged that Pratt was strictly liable for her injuries under Neb. Rev. Stat. § 54-601 (Reissue 1998) and that Semin was negligent in failing to (1) inspect the premises in order to determine that it was free of dangerous conditions, (2) maintain the premises in a reasonably safe condition, and (3) warn Plowman of the hazardous condition of which Semin knew or should have known about. Plowman included M.U.D. in the suit because it had a subrogated interest in her workers' compensation benefits.

Semin moved for summary judgment against Plowman. The district court granted Semin's motion, concluding that Semin did not have actual knowledge of the dog's dangerous propensities, and therefore, under *McCullough v. Bozarth*, 232 Neb. 714, 442 N.W.2d 201 (1989), could not be found liable for

Plowman's injuries. Thereafter, the court granted Plowman's motion for summary judgment against Pratt as to liability. After a trial on damages, the court entered a judgment against Pratt in the sum of $84,237.

Plowman filed a timely notice of appeal. Thereafter, Plowman filed a motion to bypass the Nebraska Court of Appeals. We granted Plowman's motion, and this appeal followed.

## ASSIGNMENTS OF ERROR

Plowman assigns that the district court erred in (1) failing to apply a "known or should have known" standard of care, (2) granting Semin's motion for summary judgment, and (3) excluding exhibit 11.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Tri-Par Investments v. Sousa, ante* p. 119, 680 N.W.2d 190 (2004). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

### ACTUAL KNOWLEDGE STANDARD

In *McCullough v. Bozarth, supra,* the mother of a child who was bitten by a dog owned by a tenant brought an action against the tenant's landlord. The district court sustained the defendant landlord's motion for summary judgment and dismissed the plaintiff's action. *Id.* After noting that only the owner of a dog can be strictly liable under § 54-601, we reviewed a number of cases from other jurisdictions concerning when a landlord could be held liable for injuries caused by a tenant's dog. Based on our review, we held that

> as a general rule, a landlord is liable for injuries caused by the attack of a tenant's dog only where the landlord had *actual knowledge* of the dangerous propensities of the dog

and where the landlord, having that knowledge, nevertheless leased the premises to the dog's owner or, by the terms of the lease, had the power to control the harboring of a dog by the tenant and neglected to exercise that power.

(Emphasis supplied.) 232 Neb. at 724-25, 442 N.W.2d at 208.

Plowman acknowledges that *Bozarth* represents the current state of our law. However, Plowman asks us to overrule *Bozarth* and lower the threshold for a finding of negligence on the part of a landlord. Specifically, Plowman asks us to hold that a landlord is liable for injuries caused by the attack of a tenant's dog if the landlord *knew or should have known* of the dangerous propensities of the dog. According to Plowman, such a standard would prevent landlords from blindly ignoring the unreasonable risks created by their tenants' dogs. Moreover, Plowman contends that lowering the standard for negligence under these circumstances would not be unfairly burdensome to landlords because landlords are already required to warn against other foreseeable dangers on their property. In other words, Plowman appears to be suggesting that our standard premises liability jurisprudence should extend to the instant case. See, e.g., *Aguallo v. City of Scottsbluff*, 267 Neb. 801, 678 N.W.2d 82 (2004); *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996).

We decline Plowman's invitation. The standard announced in *Bozarth* is well supported in that it has been adopted in a number of other jurisdictions, and appears to represent the majority rule. See, e.g., *Twogood v. Wentz*, 634 N.W.2d 514 (N.D. 2001); *Strunk v Zoltanski*, 62 N.Y.2d 572, 468 N.E.2d 13, 479 N.Y.S.2d 175 (1984); *Batra v. Clark*, 110 S.W.3d 126 (Tex. App. 2003); *Giaculli v. Bright*, 584 So. 2d 187 (Fla. App. 1991); *Compagno v. Monson*, 580 So. 2d 962 (La. App. 1991); *Goddard by Goddard v. Weaver*, 558 N.E.2d 853 (Ind. App. 1990); *Gibbons v. Chavez*, 160 Ariz. 73, 770 P.2d 377 (Ariz. App. 1988); *Szkodzinski v Griffin*, 171 Mich. App. 711, 431 N.W.2d 51 (1988); *Lucas v. Kriska*, 168 Ill. App. 3d 317, 522 N.E.2d 736, 119 Ill. Dec. 74 (1988); *Vigil By and Through Vigil v. Payne*, 725 P.2d 1155 (Colo. App. 1986); *Palermo v. Nails*, 334 Pa. Super. 544, 483 A.2d 871 (1984); *Uccello v. Laudenslayer*, 44 Cal. App. 3d 504, 118 Cal. Rptr. 741 (1975); Annot., 87 A.L.R. 4th 1004 (1991).

We continue to believe that the actual knowledge standard is appropriate because it holds landlords responsible for failing to act against certain known, unreasonable risks, while recognizing that, as a general rule, tenants enjoy a level of privacy in their rental premises. As noted elsewhere:

> [A] duty of care may not be imposed on a landlord without proof that he knew of the dog and its dangerous propensities. Because the harboring of pets is such an important part of our way of life and because the exclusive possession of rented premises normally is vested in the tenant, we believe that *actual* knowledge and not mere constructive knowledge is required. For this reason . . . a landlord is under no duty to inspect the premises for the purpose of discovering the existence of a tenant's dangerous animal; only when the landlord has actual knowledge of the animal, coupled with the right to have it removed from the premises, does a duty of care arise.

(Emphasis in original.) *Uccello v. Laudenslayer*, 44 Cal. App. 3d at 514, 118 Cal. Rptr. at 748.

The actual knowledge standard represents the better rule, and nothing in our recent premises liability cases would alter the reasoning in *McCullough v. Bozarth*, 232 Neb. 714, 442 N.W.2d 201 (1989). Plowman's first assignment of error is without merit.

### SUMMARY JUDGMENT

In her second assignment of error, Plowman argues that the district court erred in determining that there was no genuine issue of material fact as to whether Semin had actual knowledge of the dog's dangerous propensities. As Plowman notes, the record establishes that the dog "fiercely" barked at Semin one day while Semin repaired a ceiling fan in the rental property. However, "[i]t is not . . . reasonable to attribute vicious propensities to a dog merely because he barks at strangers . . . ." *Royer v. Pryor*, 427 N.E.2d 1112, 1117 (Ind. App. 1981). Normal canine behavior, such as a dog barking at a stranger, is not sufficient to infer that a landlord has actual knowledge of a dog's dangerous propensities. The district court did not err in concluding that Semin did not have actual knowledge of the dog's dangerous propensities.

## EXHIBIT 11

At the hearing on Semin's motion for summary judgment, Plowman offered exhibit 11, which consisted of an affidavit by an employee of the law firm representing Plowman and a number of news articles from the Internet regarding the dangerousness of pit bull terriers. Semin objected to the admission of the attachments, claiming that they contained hearsay and lacked proper foundation. After taking the objection under advisement, the district court sustained Semin's objection. On appeal, Plowman argues that exhibit 11 should have been admitted into evidence.

■ Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *Gourley v. Nebraska Methodist Health Sys.*, 265 Neb. 918, 663 N.W.2d 43 (2003). See, also, Neb. Rev. Stat. § 27-801(3) (Reissue 1995). Plowman contends that exhibit 11 was not offered for the truth of the matter asserted, but, rather, "to justify and support a change of public policy." Brief for appellant at 16. Although Plowman's brief is silent as to what policy change exhibit 11 supported, a review of the bill of exceptions makes it clear that exhibit 11 was offered in an attempt to persuade the court that it should not apply the actual knowledge standard enunciated in *Bozarth*.

In any event, that exhibit 11 was intended to support a change in public policy is irrelevant because Plowman admits that exhibit 11 was offered into the "record as further evidence [of] the danger of vicious dogs." Brief for appellant at 16. Thus, it is clear that exhibit 11 was offered to prove the truth of the matters asserted within the articles; namely, that pit bull terriers are vicious dogs. The articles constitute inadmissible hearsay, and the district court did not err in refusing to admit exhibit 11 into evidence.

## CONCLUSION

For the foregoing reasons, the district court's order granting summary judgment in favor of Semin and against Plowman was correct and is hereby affirmed.

AFFIRMED.

McCORMACK, J., not participating.