PAT J. KUSEK, APPELLEE, V. BURLINGTON NORTHERN RAILROAD COMPANY, A CORPORATION, APPELLANT.

552 N.W.2d 772

Filed August 20, 1996. No. A–95–730.

Terry C. Dougherty and Samantha B. Trimble, of Knudsen, Berkheimer, Richardson & Endacott, for appellant.

Robert P. Chaloupka, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., for appellee.

IRWIN, SIEVERS, and INBODY, Judges.

SIEVERS, Judge.

Burlington Northern Railroad Company appeals to this court in this Federal Employers' Liability Act (FELA) case filed in state court by its employee, Pat J. Kusek, who claims that he injured his back while changing a cab seat in a locomotive. Kusek alleges in his petition that Burlington was negligent in failing to provide him with a reasonably safe place to work. After a jury trial, Kusek was awarded $155,000 in damages. Burlington alleges that the jury selection process was flawed because the trial court allowed Burlington employees to be in the jury pool. Because employees of a party to a lawsuit are disqualified for cause and thus ineligible to serve on a jury in a case involving their employer, there was error in the jury selection process which requires reversal of the verdict.

## JURY SELECTION

On October 23, 1991, Kusek was employed by Burlington Northern as a cab carpenter. On that date, Kusek and Beonville Bullock, a carman for Burlington, were required to change a cab seat in a locomotive. Kusek and Bullock parked a pickup truck next to the locomotive in the railyard. Kusek then stood on the bed of the pickup truck and lifted the cab seat to Bullock, who leaned out the window of the cab to take the seat from Kusek. While lifting the seat up to Bullock, Kusek allegedly suffered an injury to a disk in his lumbar spine.

Before trial in Alliance, Nebraska, Burlington moved to exclude from the jury pool all employees of Burlington and their spouses. Kusek's attorney responded that every problem counsel for Burlington was concerned about could be taken care of by a challenge for cause or by a peremptory strike. The trial court overruled the motion to exclude Burlington employees and their spouses from the jury panel. However, the trial court did rule that "site specific" employees, i.e., carmen (the same craft as Kusek), would not be allowed to serve. Jury selection then proceeded. We note that when venireperson Keith Gardiner was called to the jury box after a challenge for cause to another venireperson was sustained, he was immediately excused by the court upon the disclosure that he was a carman. This action appears to be a result of the trial court's ruling prohibiting "site specific" employees from serving on the jury.

Although Burlington's counsel asserted at oral argument that he renewed the challenge for cause to all Burlington employees before exercising Burlington's peremptory strikes, the record is slightly different. The bill of exceptions shows that after questioning of the venire was completed, Burlington's counsel asked to approach the bench, where an "[o]ff-the-record discussion was had in low tones," after which the parties proceeded to exercise their peremptory strikes. This was followed by another unrecorded bench conference. There was then a renewed motion on the record by Burlington that all Burlington employees and their spouses be excluded from the jury. But, at no time did Burlington's counsel ever "pass the panel for cause."

Burlington argues on appeal that employees of a party are automatically subject to challenge for cause or, alternatively, are ineligible to serve by virtue of their employee status. Burlington further argues that because employees of Burlington were not struck from the jury pool, it was forced to use its five peremptory strikes (the trial court provided five strikes per side) against four Burlington employees and against a woman whose brother–in–law was a Burlington employee and whose husband was an injured employee of a railroad, albeit not Burlington. We summarize what the record reveals about the five people stricken from the jury by Burlington with peremptory strikes.

The first, Lois White, worked in the diesel shop as a laborer and had a claim against Burlington for a work–related injury, but had not yet filed a petition. White stated, "We've just talked a couple of times, nothing has gone that far yet." White stated that she did not think there was anything about the circumstances of her injury which would lead her to be unfair or biased in her judgment as a juror. The second, Eldie Cline, Sr., was a retiring machinist for Burlington who knew Kusek. Cline stated he was retiring because of a back injury. Cline stated that he did not think there was anything in particular about his condition which would affect his ability to be fair. The third, Richard Hatterman, was a sheet metal worker who had worked with Kusek. Hatterman stated that he was familiar with the task of changing cab seats. He had had a fusion between L5 and L6 in his spine as a result of a disk injury while working for a different employer, for which he received workers' compensation benefits. When asked whether he could be fair, given his job proximity to Kusek and his back injury, and knowing Kusek, Hatterman stated, "It could be a little difficult but I think I could hold pretty steady on it." The fourth, Shari Burney, had a brother–in–law working for Burlington who had been a carman. Her husband had been a car inspector for Transcisco Rail and had sustained a work–related injury to his back while employed by Transcisco. Burney stated that her husband was probably going to sue. When asked whether she could be fair, she stated, "I would try to." The fifth, venireperson, Robert Blumanthal, had been an engineer for Burlington for 20 years, his father had been a carman, and he

had numerous uncles and cousins employed at Burlington. He was told at voir dire that his cousin had filed a claim against Burlington for his uncle's death, which occurred while the uncle was working for Burlington, but he did not think the lawsuit would affect his decision because "[w]e were never really that close anyway. I don't know him that well." Blumanthal stated that as an engineer he had had experience with cab seats and had developed some opinions regarding cab seats. He stated he had had trouble with his cab seat and had asked to have it changed. Of these five venirepersons, Burlington moved to strike only Blumanthal for cause, which was denied.

Burlington argues that because it had exercised its peremptory challenges on the five venirepersons discussed above, it had to leave three people on the jury panel whom Burlington would have otherwise peremptorily struck. The first was Jerry Beagle, who had lower back problems which he described as "just like Pat is going through." Beagle used the same chiropractor as Kusek, including a visit on the morning of jury selection. The second was Jean Vancil, whose husband, a conductor for Burlington, had filed an injury claim against Burlington. The claim had been "resolved," and Vancil stated that she felt fine about the settlement. Vancil's husband had returned to work at Burlington and intended to continue working for Burlington. The third person Burlington would have peremptorily struck was Carter Hoover, who worked at the post office with Kusek's wife. He stated he did not think there was anything about the relationship he had with Kusek's wife which would interfere with his ability to be fair and impartial.

Because we have concluded that the assignments of error concerning the composition of the venire are dispositive, we dispense with further detailed recitation of the evidence. Suffice it to say that extensive evidence was introduced about whether Kusek was injured, the extent of any such injury, whether Burlington was negligent in some way with respect to its procedure for the changing of cab seats, and whether Kusek was contributorily negligent. The jury found damages of $310,000, but reduced the award to Kusek to $155,000 due to Kusek's negligence.

## STANDARD OF REVIEW

In disposing of a claim controlled by FELA, a state court may use procedural rules applicable to civil actions in the state court unless otherwise directed by the act, but substantive issues concerning a claim under FELA are determined by the provisions of the act and interpretative decisions of the federal courts construing FELA. *Chapman v. Union Pacific Railroad*, 237 Neb. 617, 467 N.W.2d 388 (1991).

Retention or rejection of a venireperson as a juror is a matter of discretion with the trial court. *Auer v. Burlington Northern RR. Co.*, 229 Neb. 504, 428 N.W.2d 152 (1988). An appellate court reaches an independent conclusion on questions of law. *Smith v. Smith*, 246 Neb. 193, 517 N.W.2d 394 (1994).

## ASSIGNMENTS OF ERROR

In addition to the jury selection issues, Burlington assigns other errors, mainly centering on evidence of subsequent remedial measures and injuries to other Burlington employees while changing cab seats.

## ANALYSIS

Burlington alleges that the court erred when it did not automatically remove from the venire for cause all Burlington employees because they are ineligible to sit in judgment on cases in which Burlington is a party. Neb. Rev. Stat. § 25–1636 (Reissue 1995) provides in part: "It shall be ground for challenge for cause that any proposed juror lacks any of the qualifications provided by law." In support, Burlington cites *Burnett v. B. & M. R. R. Co.*, 16 Neb. 332, 20 N.W. 280 (1884). In that case, the plaintiff complained that an employee of the railroad should have been struck for cause. The voir dire of the venireperson revealed that he was employed by the defendant railroad, but did not have knowledge of the facts in the case, and did not have a bias or prejudice in favor of or against either party. The plaintiff's challenge for cause of this venireperson was overruled. The plaintiff then peremptorily challenged the venireperson, who was excused. The court in *Burnett* held:

> At common law it is good cause for challenge that a juror is next of kin to either party . . . ; that he has an

interest in the cause; that there is an action depending between him and the party; . . . that he is the party's master, servant, counselor, or attorney. 3 Black. Comm., 363. And the common law in that regard is in force in this state. *Ensign v. Harney*, 15 Neb., 330. Jurors must be indifferent between the parties and have neither motive nor inducement to favor either. The fact that the defendant is a corporation does not change the rule nor render an employe eligible to sit on a jury in an action where the corporation is a party.

16 Neb. at 334, 20 N.W. at 281. The *Burnett* court held that the trial court erred in overruling the challenge for cause of the railroad employee. "But as it appears that the juror was challenged peremptorily and excluded from the jury, and the record fails to show that the plaintiff exhausted his peremptory challenges, it was error without prejudice." *Id.*

While some other courts have rejected this common–law rule, see *Savant v. Lincoln Engineering*, 899 S.W.2d 120 (Mo. App. 1995), and *CSX Transp., Inc. v. Dansby*, 659 So. 2d 35 (Ala. 1995), other jurisdictions which have visited this issue have reached a conclusion similar to that of the Nebraska Supreme Court in *Burnett*, see *Ottis v. Stevenson–Carson Sch. Dist.*, 61 Wash. App. 747, 812 P.2d 133 (1991); *Dean v. Nunez*, 534 So. 2d 1282 (La. App. 1988), *rev'd on other grounds* 536 So. 2d 1203 (La. 1989); and *Cocora v GMC*, 161 Mich. App. 92, 409 N.W.2d 736 (1987).

The common–law rule has been explained as flowing from the presumption of loyalty of employees to their employer. See, *CSX Transp., Inc., supra* (employer cannot strike its employees for cause unless employer makes showing of actual bias; however, party opposing employer may automatically strike employees for cause); *Henslee v. State*, 251 Ark. 125, 471 S.W.2d 352 (1971) (defendant who was accused of committing arson upon corporation's land could strike for cause employees of corporation as there is presumption of loyalty to corporation).

The rationale of the *Burnett* court is simply that jurors must be indifferent between the parties. The precedent of *Burnett* still stands and still makes perfect sense. However, we do not see the basis for the rationale in today's society as being so narrow as

"employees may be loyal to employers." It is possible, and sometimes probable, that employees are disloyal, antagonistic, hostile, spiteful, or all of these things toward their employer. And, in some situations, the bond of loyalty between coemployees (including between fellow union members) is far stronger than any loyalty to the employer. While we cannot say for certain that Burlington employees are loyal or disloyal, it seems apparent that the potential is manifest that jurors who are Burlington's employees and Kusek's coemployees are unlikely to hear the case with a "clean slate" and an open mind. If the employee can automatically strike his or her coemployees as jurors, without any showing of partiality, as was held in *CSX Transp., Inc., supra*, the employer should not be required to have its case decided by its employees. In short, the rule ought to run both ways.

Kusek argues that he is entitled to a trial by a jury of his "peers." We do not disagree with this broad general statement, although it is of little help in the instant case. The goal of any jury trial is a decision by a fair and impartial jury. Over a century ago, the Nebraska Supreme Court said that employment by a party, including a corporate party, renders that employee ineligible to sit on a jury when his or her employer is a party. The *Burnett* court, despite the assertion of Kusek's counsel, did not make the rule for use by employees only; rather, *Burnett* makes employees ineligible—no matter whether employee or employer asserts the rule. In modern society, the rule is more compelling than at the time *Burnett* was decided. A venire which includes Burlington conductors, engineers, machinists, electricians, and sheet metal workers in an FELA case might, by Kusek's definition, be a jury of his peers, but the suspicion of partiality would hang heavy in the courtroom. The trial court recognized this, at least in part, by its ruling that "site specific" workers, i.e., carmen, could not serve. Moreover, a management-level Burlington employee recognized the problem of his own accord when he told Kusek's counsel in voir dire that he did not think he could be impartial.

We simply hold that all employees of a party are ineligible to serve on a jury in a case involving their employer. The exclusion from the jury pool of those employed by Burlington, regardless

of their position or rank, does nothing except allow Kusek's case to be decided by those citizens of Box Butte County who are not intimately connected with one of the parties to that case. Such a jury of citizens is still composed of Kusek's peers—they just do not have the same employer as he does. In this way, the impartiality of the jury panel is not subject to obvious suspicion.

In the case at hand, Burlington made a motion, consistent with *Burnett*, that the jury panel not include any Burlington employees. That motion was overruled, and jury selection proceeded. During jury selection, Burlington made only one specific challenge for cause, to venireperson Blumanthal, which was overruled. Thus, one could suggest that by not specifically challenging the other Burlington employees besides Blumanthal, Burlington waived its *Burnett* challenge. However, *Burnett* makes Burlington employees ineligible from the outset, and thus what such employees say during voir dire about their knowledge of a plaintiff, the particular work being done at the time of the alleged injury, or their ability to serve impartially is simply not determinative, or even relevant. We have recited what the five venirepersons said during voir dire, not because it is essential to our holding, but, rather, to demonstrate that suspicion about their partiality is not illusory. We read *Burnett* as imposing a ban on employees serving on a jury involving their employers, irrespective of what they might say or know about the particular case or the parties, or how impartial they say they can be. *Burnett* holds that employees of a party are ineligible to sit as jurors in a case involving their employer. No showing of partiality is required, and we read *Burnett* as leaving no discretion in the matter to the trial court.

The doctrine that employees are ineligible to serve on a jury in a case involving their employer is said to be a challenge for "implied bias." See *McMahon v. Carlisle–Pennell Lum. Co.*, 135 Wash. 27, 236 P. 797 (1925). *McMahon* also holds that if a litigant is forced to use a peremptory challenge to remove a venireperson who should have been excused for implied bias, the litigant has, in effect, lost the "right of [the] three peremptory challenges provided by statute." *Id.* at 31, 236 P. at 798. Perhaps it is better stated that the litigant has lost the

*benefit* of his or her peremptory strikes where the litigant is forced, by a wrongfully overruled challenge for cause, to use peremptory strikes for venirepersons who should have been removed by the court as ineligible to serve.

Having made the motion at the outset, and renewed it thereafter, Burlington was not obligated to specifically challenge for cause each Burlington employee during voir dire. The court had already ruled adversely to Burlington on the issue. Moreover, unlike the situation in *Burnett*, Burlington used all of its peremptory challenges. In addition to the general challenge to Burlington employees, Burlington made a specific challenge for cause to its employee Blumanthal during voir dire. Thus, the factor that saved the trial in *Burnett* and prevented a reversal, i.e., that the employee was stricken and the complaining party still did not use all of its peremptory challenges, is not present here. Burlington used all of its peremptory challenges, including one on Blumanthal. Additionally, Burlington still had three people it asserts it would have peremptorily struck: (1) Vancil, whose husband had settled his back–injury case against Burlington and continued to work there; (2) Beagle, who had the same back problem and the same chiropractor as Kusek; and (3) Hoover, who worked with Kusek's wife. These three people probably are the sort of venirepersons, despite their affirmations of impartiality, for whom peremptory strikes would obviously be considered. However, the presence of others, after all peremptory strikes are exhausted, against whom peremptory strikes might logically be lodged is not necessary to a finding of prejudicial error when the trial court refuses to strike an ineligible venireperson. See *McMahon*, 135 Wash. at 31, 236 P. at 798 ("[i]f no reason need be given [for the exercise of a peremptory strike], we should not require the injured party [whose valid implied bias challenge was overruled] to affirmatively show by the record that there were reasons for excusing some other juror that sat on the panel"). See, also, *Bishop v Interlake, Inc*, 121 Mich. App. 397, 402, 328 N.W.2d 643, 646 (1982), holding:

> However, we do not construe the requirement of "prejudice" to apply to situations where an improper denial of a challenge for cause compels the challenging

party to exercise a peremptory challenge to the juror desired to be excused. In these situations, an erroneous cause ruling compels a party to prematurely exhaust his limited number of peremptory challenges and to forego the opportunity to excuse another juror by use of a peremptory challenge.

■ The holding in *Bishop* was explained as being grounded in the notion that peremptory challenges are for personal, unarticulable, and unarticulated reasons, which obviously now are limited with respect to race and gender by *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), and *J. E. B. v. Alabama ex rel. T. B.*, 511 U.S. 127, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994). *Batson* was extended to civil cases in *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S. Ct. 2077, 114 L. Ed. 2d 660 (1991). As a consequence, a litigant is denied an opportunity to act on his or her intuitions and subjective feelings about venirepersons by having to prematurely exhaust his or her peremptory challenges to rid the panel of those who should have been struck as ineligible for implied bias. *Burnett* may impose a more stringent standard because the challenging party must exhaust all peremptory strikes before prejudicial error can be found from the failure to sustain an implied bias challenge. In the instant case, Burlington used all of its peremptory strikes, and thus the standard of *Burnett* for prejudicial error is satisfied.

## CONCLUSION

The trial court erred in not sustaining the motion to exclude Burlington employees from the venire. Because Burlington used all of its peremptory strikes, there was prejudicial error and the verdict cannot stand. Because we remand the matter for a new trial and are uncertain whether the same evidentiary issues and difficulties concerning subsequent remedial measures and other injured employees will arise in that new trial, we decline to embark on the perhaps fruitless exercise of determining issues, in an advisory capacity, which may never be presented again. See *Crowder v. Aurora Co-op. Elev. Co.*, 223 Neb. 704, 393 N.W.2d 250 (1986).

REVERSED AND REMANDED FOR A NEW TRIAL.