SHARON DEMPSEY HOWE, APPELLANT, V.
LAURI HINZMAN, APPELLEE.
710 N.W.2d 669

Filed March 7, 2006.    No. A-04-683.

Vincent M. Powers and Mark T. Bestul, of Vincent M. Powers & Associates, for appellant.

Timothy E. Clarke, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

INBODY, Chief Judge, and CARLSON and CASSEL, Judges.

CASSEL, Judge.

## INTRODUCTION

Sharon Dempsey Howe's negligence claim against Lauri Hinzman, arising from an automobile accident, resulted in a jury verdict finding both parties to have been negligent and reducing Howe's award for damages accordingly. Howe appeals. Because we conclude that (1) the district court did not abuse its discretion by refusing to strike a juror who maintained that he could be fair and impartial after disclosing that he had received a message from a legal assistant to Hinzman's counsel regarding that attorney's representation of the juror's daughter in an unrelated case and (2) Howe suffered no prejudice when the district court overruled Howe's motion for a directed verdict on the issue of Hinzman's negligence, we affirm.

## BACKGROUND

On July 6, 2001, shortly before 2:30 p.m., two automobiles, operated respectively by Howe and Hinzman, collided near the intersection of 23d and Q Streets in Lincoln, Nebraska. On August 19, 2002, Howe filed a petition against Hinzman, alleging that Hinzman's negligence had proximately caused injuries to Howe and praying for damages. In an answer, Hinzman alleged that any injuries Howe suffered had been caused by Howe's own negligence and prayed that Howe's petition be dismissed. The district court conducted a jury trial on April 5 through 7, 2004.

Near the intersection of 23d Street, a two-way street, and Q Street, a one-way, westbound street, Q Street consists of two traffic lanes separated by a white dashed line. The south lane is approximately twice as wide as the north lane. The southern portion of the south lane serves as a parking lane. The division of the south lane is not marked. The approximate point of impact between the parties' vehicles was in the intersection of 23d and Q Streets, 10 feet 6 inches north of the south curb line of Q Street and 2 feet 6 inches west of the east curb line of 23d Street. Including the two travel lanes and the parking lane, Q Street is 36 feet wide. Photographs of the scene on the day of the accident depict a clear and dry road surface and sunny weather.

The parties gave conflicting accounts of the accident. Hinzman testified that immediately before the accident, she was

traveling west on Q Street in the south travel lane. Hinzman stated that as she approached the intersection of 23d and Q Streets, she slowed down, engaged her left turn signal, began to turn left, and collided with Howe's vehicle. Hinzman testified that she thought Howe had attempted to pass her by traveling in the parking lane. Hinzman admitted that she did not see Howe's vehicle until the collision, that she did not look over her left shoulder or in her rearview mirror before turning, that she was ticketed for an improper turn, and that she paid the fine for the ticket. Hinzman admitted that she did not look in her side mirror before turning left, but she also testified that if she checked her side mirror, it was before she turned on her turn signal. Hinzman testified that she did not think anyone would be traveling in the parking lane. Hinzman's vehicle sustained damage on the left front portion, and Howe's vehicle sustained damage on the right front portion.

Howe testified that she was traveling in the south travel lane on Q Street and that Hinzman was in the north travel lane. Howe testified that she was traveling faster than Hinzman and was next to, but not yet fully alongside, Hinzman's vehicle when Hinzman attempted to turn left onto 23d Street, causing the collision. Howe denied seeing Hinzman's left turn signal. According to Howe, the collision occurred before the two vehicles reached the intersection. Howe testified that she spoke to Hinzman after the accident and that Hinzman gave her the impression that Hinzman did not know where Howe's vehicle had come from.

A Lincoln police officer who was the first officer at the scene of the accident testified that when he arrived, the parking lane on Q Street was empty for one-half block east of the intersection with 23d Street. The officer had spoken with both parties at the scene of the accident. The officer testified that Hinzman initially told him she had been traveling in the north travel lane and had stopped before turning but that she later told him she had been traveling in the south travel lane at the time of the collision and had only slowed down before turning. Hinzman testified that when she initially spoke to the officer, she was nervous and indicated to him the lane she had been in by pointing. Hinzman denied having used the word "north" in her conversation with the

officer at the scene, but admitted that she may have agreed with the officer's confirmatory statement that she had been in the north lane. Hinzman did not recall telling the officer that she came to a stop before turning.

On the last day of trial, one of the jurors informed the district court that he had received a message on his answering machine sometime the previous day from an individual at the law firm of Hinzman's attorney, which message indicated that Hinzman's attorney was representing the juror's daughter in another case. The court conducted a hearing on the matter, outside the presence of the jury.

The juror stated that his daughter was 24 years old, did not reside with him, and was involved in litigation arising out of a car accident. He assured the court that he could separate his daughter's case from the instant case, that he could remain fair and impartial, and that he would base his decision in the instant case on the facts presented at trial. Upon questioning by counsel for both parties, the juror gave further assurances that the coincidence would not influence his decision in the instant case and that he would follow the instructions of the court. The juror reported that he had not spoken to Hinzman's attorney. The juror stated that he had come forward with the information because he wanted to "let you guys know I was playing square."

At the end of the hearing on that matter, Howe moved to strike the juror. The district court overruled Howe's motion, and the jury returned to finish hearing the evidence. At the close of evidence, Howe moved for a directed verdict, arguing that Hinzman failed to keep a proper lookout. The district court overruled the motion, stating that it could not say as a matter of law that Hinzman had a duty to look into the parking lane before turning.

Following the jury instruction conference, the district court received the affidavit of the legal assistant who left the message on the juror's answering machine. According to the legal assistant's affidavit, the message was intended for the juror's daughter, whom Hinzman's attorney was defending in a lawsuit unrelated to the instant case. Hinzman's attorney had asked the legal assistant to arrange a meeting between the attorney, the juror's daughter, and other defendants in the lawsuit in which the juror's

daughter was involved. The juror's telephone number was listed in his daughter's file. When the legal assistant left the message, she did not know that she was telephoning the residence of a juror in the instant case, and she did not speak to the juror.

The district court instructed the jury regarding Howe's claims that Hinzman was negligent, specifically in failing to keep a proper lookout, making an improper turn, failing to yield the right-of-way, and failing to keep proper control of her vehicle. The jury was also instructed concerning Hinzman's claims that Howe was negligent, specifically in failing to keep a proper lookout, failing to exercise reasonable control over her vehicle, failing to yield the right-of-way, and traveling too fast for the conditions. The instructions stated:

> If you find that [Howe] has met her burden of proof and [Hinzman] has met her burden of proof th[e]n you must determine to what extent or degree the negligent conduct of each contributed to the damages of [Howe] expressed as a percentage of 100%.

> If you find that the negligence of [Howe] was equal to or greater than the negligence of [Hinzman], then you must find for [Hinzman]. . . .

> If . . . you find that [Howe's] negligence is less than [Hinzman's] negligence you must first determine [Howe's] total damages without regard to the percentage or degree of negligence attributable to . . . each party. You must then reduce the total damages by the percentage of negligence attributable to [Howe].

The jury found that both parties were negligent. The jury attributed 49 percent of the fault to Howe and 51 percent to Hinzman and adjusted Howe's award of damages accordingly. The district court accepted the jury's verdict and entered judgment. Howe moved for a new trial, and the court overruled her motion. Howe now appeals.

## ASSIGNMENTS OF ERROR

Howe alleges, rephrased, that the district court erred in (1) failing to grant her motion to strike the juror and (2) submitting the issue of Hinzman's negligence to the jury rather than finding her negligent as a matter of law.

## STANDARD OF REVIEW

■ The decision to retain or reject a juror is a matter of discretion with the trial court, and such decision is reviewed for an abuse of discretion. See *Schindler v. Walker*, 256 Neb. 767, 592 N.W.2d 912 (1999).

■ An abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, when an issue should be decided as a matter of law. *LeRette v. American Med. Security*, 270 Neb. 545, 705 N.W.2d 41 (2005).

## ANALYSIS

*Motion to Strike Juror.*

■ Howe contends that the district court erred in failing to grant her motion to strike the juror. The competency of a juror is generally presumed, and the burden is on the challenging party to establish otherwise. *State v. Krutilek*, 254 Neb. 11, 573 N.W.2d 771 (1998); *Schindler v. Walker*, 7 Neb. App. 300, 582 N.W.2d 369 (1998), *affirmed* 256 Neb. 767, 592 N.W.2d 912 (1999). A trial judge is not required to excuse a juror when the juror is able to decide the case fairly and impartially. See *id.* An appellate court defers to the trial court's decision whenever a juror is unequivocal that he or she can be fair or impartial. See *id.* This rule applies both to the issue of whether a potential juror should be removed for cause prior to trial and to the situation of whether a juror should be removed after the trial has commenced. See *id.*

In the present case, the juror, of his own volition, informed the court that someone from the law office of Hinzman's attorney had left a message for the juror regarding the representation of his adult daughter in an unrelated lawsuit. Upon questioning, the juror gave unequivocal assurances that he could separate his daughter's case from the instant case, that he could remain fair and impartial, that he would base his decision on the facts presented at trial, that the coincidence would not influence his

decision, and that he would follow the instructions of the court. We therefore consider Howe's arguments which attempt to escape the conclusion that the district court did not abuse its discretion in overruling Howe's motion to strike the juror.

Howe alleges that the juror's revelation gave rise to a rebuttable presumption of prejudice which was not rebutted. In a criminal case, when an improper communication with a juror is shown to have taken place, a rebuttable presumption of prejudice arises, and the burden is on the State to prove that the communication was not prejudicial. See *State v. Harrison*, 264 Neb. 727, 651 N.W.2d 571 (2002).

We are not convinced that a message left on a juror's answering machine by the legal assistant of counsel for one of the parties regarding an unrelated matter involving the juror's adult daughter is the sort of contact contemplated by cases which recognize a rebuttable presumption of prejudice. Nonetheless, even assuming, without deciding, that a presumption of prejudice arose in this case, such presumption was effectively rebutted. At a hearing outside of the presence of the jury, the juror repeatedly and unequivocally asserted his impartiality. Howe asserts, "[M]ere recitation from a juror that he can remain fair and impartial is not sufficient." Brief for appellant at 12. However, as noted above, Nebraska law entrusts the trial courts with the discretion to assess the veracity of such statements. See, e.g., *Schindler v. Walker*, 7 Neb. App. 300, 582 N.W.2d 369 (1998), *affirmed* 256 Neb. 767, 592 N.W.2d 912 (1999).

Howe also claims that Hinzman's opposition to Howe's motion to strike was a "tactical decision" intended to avoid utilizing an alternate juror. Brief for appellant at 12. This argument assumes that Howe suffered some manner of prejudice from the retention of the juror. The record also fails to support this argument.

Howe next argues that the district court should have removed the juror after his "implied bias" became apparent. *Id.* at 11. She relies on *Kusek v. Burlington Northern RR. Co.*, 4 Neb. App. 924, 552 N.W.2d 778 (1996). In *Kusek*, Pat J. Kusek brought suit against Burlington Northern Railroad Company (Burlington Northern), his employer. The trial court allowed as jurors current employees of Burlington Northern who were coemployees of

Kusek and allowed the jury to decide issues between the parties. On appeal, Burlington Northern argued that such railroad employee jurors, some of whom served on the jury and some of whom were struck with peremptory challenges, should have been removed from the jury pool. This court observed that employees may harbor feelings of loyalty or animosity for their employers and held that because of implied bias, "all employees of a party are ineligible to serve on a jury in a case involving their employer . . . irrespective of what they might say or know about the particular case or the parties, or how impartial they say they can be." *Id.* at 931-32, 552 N.W.2d at 782-83. We determined that the trial court had no discretion in the matter.

In *Schindler v. Walker, supra,* we again discussed the doctrine of implied bias and emphasized that the application of the doctrine depends on a connection between the juror and the party. In that case, Mary E. Schindler brought a wrongful death action against the University of Nebraska Medical Center (UNMC) and various medical professionals after her husband died at UNMC. A bench trial was conducted on the claims against UNMC and a medical resident, and a jury trial was conducted on Schindler's remaining claims. On appeal, Schindler alleged that the trial court erred in refusing to strike from the jury pool individuals closely related to UNMC, employees and former employees of UNMC, and coemployees of two of the defendant physicians. We declined to extend the holding of *Kusek, supra,* noting that UNMC was not a party to the issues being decided by the jury and that therefore, no implied bias could exist on the part of UNMC employees deciding issues concerning the defendant physicians. We also observed that none of the potential jurors were coemployees of the defendant physicians, who were not considered to be employees of UNMC.

Unlike *Kusek,* the instant case did not involve an employment relationship between a juror and a party. In fact, the connection in this case did not involve a juror and a party; rather, the juror's adult daughter was being represented in an unrelated case by counsel for one of the parties. As we pointed out in *Kusek,* an employee is highly likely to have certain feelings about his or her employer, be they positive or negative. No such sentiments are necessarily incumbent where, as in the instant case,

the connection involves the parent of an adult who happens to be represented by the same attorney as one of the parties. We decline to extend the implied bias doctrine to the facts of this case. Having rejected Howe's arguments, we conclude that the district court did not abuse its discretion in overruling Howe's motion to strike the juror.

*Motion for Directed Verdict.*

■ Howe also assigns that the district court erred by refusing to find Hinzman negligent as a matter of law in failing to look to the left before turning left. A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, when an issue should be decided as a matter of law. *LeRette v. American Med. Security,* 270 Neb. 545, 705 N.W.2d 41 (2005). The district court overruled Howe's motion for a directed verdict and submitted the issue of Hinzman's comparative negligence to the jury.

We find *Traphagan v. Mid-America Traffic Marking,* 251 Neb. 143, 555 N.W.2d 778 (1996), a case arising under the comparative negligence statute, Neb. Rev. Stat. § 25-21,185.09 (Reissue 1995), to be instructive. In that case, Kathy Jo Traphagan was traveling on a highway when her car collided with the right rear of a stopped truck which was in her range of vision and was owned and operated by Mid-America Traffic Marking (Mid-America). There was evidence that both parties had been negligent. The trial court found that Traphagan was negligent as a matter of law but allowed the jury to determine the percentage of Traphagan's negligence as compared to Mid-America's. On appeal, Mid-America argued that Nebraska's range of vision rule required the trial court to find as a matter of law that Traphagan's negligence equaled or exceeded Mid-America's negligence. In the majority opinion, the Nebraska Supreme Court stated:

> We now hold that where reasonable minds may draw different conclusions and inferences regarding the negligence of the plaintiff and the negligence of the defendant such that the plaintiff's negligence could be found to be less than 50 percent of the total negligence of all persons against whom

recovery is sought, the apportionment of fault must be submitted to the jury.

*Traphagan v. Mid-America Traffic Marking*, 251 Neb. at 149, 555 N.W.2d at 783. The court concluded that it could not say as a matter of law that Traphagan's negligence equaled or exceeded Mid-America's negligence and held that the trial court properly submitted the negligence issue to the jury in order to have it compare Traphagan's negligence to the negligence of Mid-America. However, a concurring opinion in *Traphagan* filed on behalf of four justices provides an alternative analysis which we find to be applicable to the case before us. The concurrence reasoned that the question of Traphagan's negligence should have been submitted to the jury rather than decided by the court. However, the concurrence concluded that because the jury was properly instructed to weigh the relative contributions of the parties' negligence under the comparative negligence statute, no prejudice resulted to Traphagan.

In the present case, there was evidence that both parties were negligent. Indeed, Howe does not assign or argue that the issue of her own negligence should not have been submitted to the jury. Rather, her contention is that the jury should have been instructed that Hinzman was negligent. This argument ignores the reality that the district court would still have been required to submit the apportionment of negligence to the jury.

Error without prejudice provides no ground for appellate relief. *Agri Affiliates, Inc. v. Bones*, 265 Neb. 798, 660 N.W.2d 168 (2003). Even if we were to assume the district court erred in overruling Howe's motion for a directed verdict, Howe was not prejudiced by the ruling. Like the trial court in *Traphagan v. Mid-America Traffic Marking*, 251 Neb. 143, 555 N.W.2d 778 (1996), the district court in the instant case instructed the jury to weigh the relative contributions of the parties' negligence. The district court also instructed regarding Howe's claims that Hinzman had failed to keep a proper lookout, made an improper turn, failed to yield the right-of-way, and failed to maintain control of her vehicle. Because the district court could not have directed a verdict in favor of Howe on the issue of Howe's own negligence, the jury was required to evaluate the

negligence of both parties. While the jury could have declined under the instructions to apportion any fault to Hinzman, it instead apportioned 51 percent of the fault to her and, by its general verdict, determined that Hinzman had failed to keep a proper lookout. See *Gustafson v. Burlington Northern RR. Co.*, 252 Neb. 226, 561 N.W.2d 212 (1997) (jury, by its general verdict, pronounces upon all or any issues in favor of prevailing party). Because the jury found that Hinzman was negligent, we cannot say that Howe suffered prejudice from the district court's refusal to determine as a matter of law that Hinzman was negligent. See *Traphagan v. Mid-America Traffic Marking, supra* (Gerrard, J., concurring). Howe's assignment of error on this matter lacks merit.

## CONCLUSION

For the foregoing reasons, we conclude that the district court did not err in overruling Howe's motion to strike a juror and in overruling Howe's motion for a directed verdict, and we affirm.

AFFIRMED.