IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


MOLINA V. MAXSON


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


ISABELLA EMMA MOLINA-GUARDIOLA, A MINOR,
BY AND THROUGH LACY MOLINA, HER MOTHER
AND NATURAL GUARDIAN, APPELLANT,

V.

GEORGE MAXSON ET AL., APPELLEES.


Filed July 23, 2019.    No. A-18-460.


Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Siegfried H. Brauer for appellant.

Robert S. Lannin and Phoebe L. Gydesen, of Baylor Evnen, L.L.P., for appellees.


MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

MOORE, Chief Judge.

INTRODUCTION

This case involves claims made by Isabella Emma Molina-Guardiola (Molina), by and through her mother Lacy Molina (Lacy), against George Maxson (Maxson), Chad Pieschke (Chad), Francine Pieschke (Francine) individually, and Francine in her capacity as the mother of Trever Pieschke (Trever), Samantha Pieschke (Samantha), and Maggie Pieschke (Maggie) (collectively Pieschke children). Molina alleged that Maxson and each of the Pieschkes or some combination thereof, as owners of a dog that bit her on March 8, 2012, were liable for her injuries and that Maxson was also liable to her as owner of the property where the incident occurred. The district court for Lancaster County granted summary judgment in favor of Maxson, and the case proceeded to a jury trial against the remaining defendants. The jury determined that Chad and

- 1 -

Francine in her individual capacity were the owners of the dog and awarded Molina damages of $35,000. On appeal, Molina challenges Maxson's dismissal as a defendant, the court's failure to dismiss a venireperson from the jury for cause, the jury's determination that the Pieschke children were not owners of the dog, and the amount of damages awarded. For the reasons set forth herein, we affirm.

BACKGROUND

On October 18, 2013, Molina filed a complaint against Maxson and Francine in the district court. She alleged that on March 8, 2012, she was bitten by a dog on premises owned or lawfully possessed by Maxson and Francine, that she was present on the premises at their invitation, and that the dog was owned by them and on the premises with their consent. She alleged that while she was on the premises, the dog, unprovoked, attacked her, causing serious bite and tear wounds to her legs and ankles, that she sustained past and future temporary and permanent injuries including substantial scarring, and that she had incurred medical expenses of at least $1,138.64 and would incur future scar revision surgery costs of at least $7,045.40. She also alleged that she had incurred damages for past and future mental and physical pain and suffering. Molina sought damages against the defendants, jointly and severally, in an amount of not less than $8,184.04, as well as general damages, costs, and interest. In subsequent amended complaints, Molina added as defendants Chad and Francine in her capacity as mother of the Pieschke children. In the operative complaint, Molina alleged that all of the defendants were the owners or lawful possessors of the premises and that the dog was owned by, in the possession of, subject to control by, and on the premises with the consent of all of the defendants.

The transcript on appeal includes answers filed by Maxson, Chad, and Francine in her capacity as the Pieschke children's mother. In their answers, they denied liability and Maxson and Francine specifically raised the affirmative defense of provocation by Molina. We note that Chad and Francine in her individual capacity have appeared pro se through this case.

On March 8, 2017, Molina filed a motion for partial summary judgment. She sought an order granting summary judgment against all defendants on the issue of liability under Neb. Rev. Stat. § 54-601 et seq. (Reissue 2010 & Cum. Supp. 2018), alleging that each of the defendants was an owner of the dog responsible for her injuries. Subsequently, Maxson also filed a motion for summary judgment, alleging that there was no genuine issue of material fact with regard either to his "non-ownership of the dog" or his liability as a property owner.

A summary judgment hearing was held on May 15, 2017. The district court received a memorandum from Molina's attorney with attachments (including various discovery responses, depositions of Maxson and Francine, and an Animal Control report) offered by Molina and a deposition of Lacy and an affidavit from Maxson's attorney with attachments (various discovery responses and excerpts from Maxson's and Francine's depositions) offered by Maxson.

The summary judgment evidence generally showed that Molina, then age 7, was visiting a residence in Lincoln, Nebraska, on March 8, 2012, when a large dog bit her on her legs and ankles. The residential property is owned by Maxson and rented by Francine who lives there with the Pieschke children, although Maxson has not collected rental payments from Francine for "a long time." Chad lived with them on the property prior to his divorce from Francine. Maxson, a family

friend, lives on the property intermittently when not caring for his mother. In late 2011, Chad began bringing the dog, a bullmastiff mixed-breed, over to stay at the house for 3-day periods about once a month while he traveled out of town for work. While outdoors on the property, the dog was kept in an enclosed fence kennel.

In their depositions, both Francine and Maxson testified that Francine did not make Maxson aware of the dog's visits as dogs are not permitted under the terms of the lease. In Francine's discovery responses, she alluded to it being "ok [for her] to watch" a dog on the premises; however, in her deposition, she testified that that had not been a "true answer." Maxson did not recall ever seeing the dog on the property and testified that he did not learn of the incident until 2-3 days after the dog bite occurred. He also testified that he had told Francine several times that he did not want animals on the property. A discovery request for admission directed to Maxson asked him to admit "That prior to the date of the Incident you had instructed Chad Pieschke to remove the Dog from the Premises." Maxson responded, "Denies; this Defendant told Francine that the dog was not to be on the Premises." When asked about this response during his deposition, Maxson stated that he told Francine "all along I don't want no animals" and again testified that he was not aware of the dog's presence on the property until a couple of days after the incident.

With respect to the dog bite incident, the summary judgment evidence shows that on March 8, 2011, the Pieschke children (at least, Samantha and Trever) and Molina were playing outside on the property. Francine was inside the house and heard the children scream. She ran outside and observed Molina on the ground bleeding from the legs. Trever was holding the dog by the collar. Conflicting evidence was presented as to how the dog got out of the kennel. We further detail the evidence relevant to the issues on appeal in the analysis section below.

On September 21, 2017, the district court entered an order denying Molina's motion for partial summary judgment and granting Maxson's motion for summary judgment. In denying Molina's motion for partial summary judgment, the court found genuine issues of material fact regarding ownership of the dog (at least with respect to the defendants other than Maxson). The court determined the record showed that it was possible the dog was owned by "numerous individuals" and that because Molina had offered conflicting evidence suggesting that each defendant or some combination of the defendants owned the dog, a summary judgment finding of liability was inappropriate. The court also determined that the jury would consider the affirmative defense of provocation. The court, however, granted Maxson's motion for summary judgment. It noted Molina's concession in a particular exhibit that there was no evidence proving that Maxson had actual knowledge of the dog's dangerous propensities. The court determined that even when considering the evidence in the light most favorable to Molina, she had failed to show that "the first element of the standard for landlord liability can be satisfied." The court rejected Molina's argument that Maxson should remain in the case and be considered an owner of the dog by operation of § 54-606. The court stated that Molina had failed to show a genuine triable issue against Maxson.

A jury trial was held on November 6 and 7, 2017. Because Chad and Francine individually had not participated in the pretrial conference and did not submit pretrial conference memoranda, the district court precluded them from "offering testimony [themselves]," although the court allowed them the opportunity to cross-examine witnesses, voir dire the jury, and present opening

statements and closing arguments. During voir dire, Francine individually and Chad made motions for continuances to obtain attorneys, which motions were denied by the court. Molina offered testimony from Lacy, herself, and Chad. During Molina's testimony, she was allowed to display the current condition of her scars to the jury. She offered exhibit 10, medical bills for some of the treatment she received at the hospital and a health center following the dog bite, which the court received with a limiting instruction as indicated below. The court also received photographs of Molina's wounds and scars at various stages, pictures of the backyard where the dog bite occurred, letters from a doctor about the difficulty and potential cost of future scar revision surgery, and a mortality table. At the request of Molina's attorney, the court deemed certain requests for admissions directed to Francine and Chad "to the extent that those are offered" as admitted, although the record does not clearly show whether these were read to the jury as apparently was intended. After Molina rested, the court overruled a motion for directed verdict made by Francine in her capacity as the Pieschke children's mother. In that capacity, Francine then offered testimony from Trever, Samantha, and Chad. After Francine rested, the court overruled Molina's motion for a partial directed verdict as to ownership of the dog, and Molina then offered rebuttal testimony from her grandmother and herself. The evidence presented at trial generally concerned the issues of ownership of the dog, whether there was provocation prior to the dog bite, and Molina's damages. We have set forth specific details of the evidence relevant to the issues on appeal in the analysis section below.

The district court's jury instructions included instructions that exhibit 10 containing the past medical expenses for Molina's injuries had been received for the limited purpose of determining the nature and extent of her damages but not for the recovery of the expenses as damages, a definition of ownership, and instructions that dogs are personal property and that minor children are capable of owning personal property.

The jury returned a verdict in Molina's favor of $35,000, against Chad and Francine in her individual capacity after finding that Chad and Francine were the owners of the dog. The district court accepted the verdict and entered judgment accordingly.

Francine in her capacity as the Pieschke children's mother filed a timely motion to amend, asking the court to also enter judgment in her favor. Prior to the scheduled hearing on Francine's motion, Molina filed a notice of appeal. This court summarily dismissed Molina's first appeal on February 5, 2018, in case No. A-17-1256, for lack of a final, appealable order. On April 12, 2018, the district court filed an "AMENDED VERDICT," entering judgment against Chad and Francine in her individual capacity and in favor of Francine in her capacity as the Pieschke children's mother. Molina then perfected the current appeal.

ASSIGNMENTS OF ERROR

Molina asserts that (1) the district court erred in sustaining the motion for summary judgment in favor of Maxson, (2) the court erred in failing to dismiss from the jury panel those jurors who expressed their intent to disregard the law if it meant entering judgment against the Pieschke children, (3) the jury erred in failing to find Francine in her capacity as the mother of the Pieschke children an owner of the offending dog and liable for Molina's injuries, and (4) the jury's

determination of damages in the amount of $35,000 was clearly wrong, inadequate, and unsupported by the evidence.

## STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Kaiser v. Union Pacific RR. Co.*, 303 Neb. 193, 927 N.W.2d 808 (2019). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

The decision to retain or reject a venireperson as a juror rests in the trial court's discretion, and an appellate court will reverse only when it is clearly wrong. *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011).

When reviewing a jury verdict, an appellate court considers the evidence and resolves evidentiary conflicts in favor of the successful party. *Pantano v. American Blue Ribbon Holdings*, 303 Neb. 156, 927 N.W.2d 357 (2019). A jury verdict may not be set aside unless clearly wrong, and it is sufficient if there is competent evidence presented to the jury upon which it could find for the successful party. *Id.*

The amount of damages to be awarded is a determination solely for the fact finder, and the fact finder's decision will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved. *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018). An award of damages may be set aside as excessive or inadequate when, and not unless, it is so excessive or inadequate as to be the result of passion, prejudice, mistake, or some other means not apparent in the record. *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011).

## ANALYSIS

*Summary Judgment.*

Molina asserts that the district court erred in sustaining the motion for summary judgment in favor of Maxson.

A party moving for summary judgment makes a prima facie case for summary judgment by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. *Kaiser v. Union Pacific RR. Co., supra*. Once a party moving for summary judgment makes a prima facie case, the burden shifts to the opposing party to produce admissible contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id.*

On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Sparks v. M&D Trucking*, 301 Neb. 977, 921 N.W.2d 110 (2018). Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show there is no genuine issue as to any material facts or as to the ultimate inferences

that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Cisneros v. Graham*, 294 Neb. 83, 881 N.W.2d 878 (2016).

We first address Maxson's liability as owner of the real property where the dog bite incident occurred and as Francine's landlord. As discussed further below, by statute in Nebraska, a dog's owner is strictly liable for injuries inflicted by the dog, without any proof that the owner knew of the dog's dangerous propensities. *McCullough v. Bozarth*, 232 Neb. 714, 442 N.W.2d 201 (1989). See § 54-601. The standard of liability in Nebraska is different, however, for landlords. The Nebraska Supreme Court determined in *McCullough v. Bozarth, supra*, that as a general rule, a landlord is liable for injuries caused by the attack of a tenant's dog only where the landlord had actual knowledge of the dangerous propensities of the dog and where the landlord, having that knowledge, nevertheless leased the premises to the dog's owner or, by the terms of the lease, had the power to control the harboring of a dog by the tenant and neglected to exercise that power. In that case, the Supreme Court affirmed the grant of summary judgment in favor of the landlords, where the landlords denied that they knew of the dangerous propensities of the dog or breed of dog, and the plaintiff did not dispute that fact.

In this case the lease between Maxson and Francine prohibited dogs. Arguably, by the terms of the lease, Maxson had sufficient control over the premises so as to have been able to require the removal of the dog from the premises. However, this is not enough to avoid summary judgment. The standard for landlord liability requires first, that the landlord have actual knowledge of any dangerous propensities of the dog at issue and second, having this knowledge, that the landlord lease the premises to the dog's owner or by virtue of the lease, have the power to control the harboring of the dog and fail to do so. Because there is no evidence that Maxson knew of any dangerous propensities of the dog in question, summary judgment in his favor on the issue of his liability as landlord was properly granted.

In her brief, Molina discusses, at length, evidence of whether Maxson knew or should have known that the dog lived, or was regularly present, on the property. However, the standard is not that the landlord should have known the dog was on the property; rather, the standard requires the landlord to have actual knowledge of the dog's dangerous propensities. In *Plowman v. Pratt*, 268 Neb. 466, 684 N.W.2d 28 (2004), the Nebraska Supreme Court declined to overrule *McCullough* and extend Nebraska's premises liability law to hold landlords liable for injuries caused by a tenant's dog if the landlord knew or should have known of the dog's dangerous propensities. The *Plowman* court stated, "We continue to believe that the actual knowledge standard is appropriate because it holds landlords responsible for failing to act against certain known, unreasonable risks, while recognizing that, as a general rule, tenants enjoy a level of privacy in their rental premises." *Id.*, 268 Neb. at 471, 684 N.W.2d at 32 (2004). In sum, evidence of whether Maxson had knowledge of the dog's presence on the property is insufficient, unless the undisputed evidence also shows both that the dog had dangerous propensities and that Maxson had actual knowledge of those dangerous propensities.

Here, there was no evidence presented at the summary judgment hearing to show that Maxson knew of any dangerous propensities exhibited by the dog and very little to suggest that the dog had any dangerous propensities at all prior to biting Molina. In his memorandum submitted at the summary judgment hearing, Molina's attorney acknowledged that "at this juncture there is

no dispositive evidence disclosing that Maxson had knowledge regarding any dangerous conduct or propensities of the subject dog." This assessment is consistent with our own review of the summary judgment evidence. The only evidence suggestive of any dangerous propensities is Francine's deposition statement that the dog "got protective" when "new people would come around." There is nothing to clarify what protective behavior was exhibited by the dog or to show that Maxson knew of this protectiveness around new people. The record shows that the dog knew Molina and had been around her previously, and Lacy testified that when she took Molina to the Pieschkes' residence for visits prior to the dog bite incident, she never observed the dog being aggressive or behaving improperly and that she had no concerns about its behavior. Viewing the evidence in the light most favorable to Molina, the party against whom summary judgment was granted, we find that the district court properly granted Maxson summary judgment on the issue of Maxson's liability as landlord.

Next, we address Molina's arguments with respect to Maxson's liability as an alleged owner of the dog. Molina presents some argument about Maxson's liability as an owner of the dog under the Lincoln Municipal Code; however, the relevant portions of the municipal ordinance are not included in the record. Courts of general jurisdiction will not take judicial notice of municipal ordinances not present in the record, nor will appellate courts on appeal. *Hamersky v. Nicholson Supply Co.*, 246 Neb. 156, 517 N.W.2d 382 (1994). Further, Molina did not raise the issue of Maxson's liability under any municipal ordinance at the summary judgment hearing. In an ordinary civil case, an appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court, because a trial court cannot commit error in resolving an issue never presented and submitted to it for disposition. See *Upper Republican NRD v. Dundy Cty. Bd. of Equal.*, 300 Neb. 256, 912 N.W.2d 796 (2018). Perhaps in an attempt to skirt these failures, Molina cites *Davio v. Nebraska Dept. of Health & Human Servs.*, 280 Neb. 263, 786 N.W.2d 655 (2010) (under liberalized rules of notice pleading, party only required to set forth short and plain statement of claim; party not required to plead legal theories or cite appropriate statutes). However, without the benefit of the applicable municipal ordinances involved, neither a district court nor an appellate court is in a position to declare the rights of the parties under the ordinances, any more than a court could declare the rights of parties to a contract without the benefit of the contract. *Hawkins Constr. Co. v. Director*, 240 Neb. 1, 480 N.W.2d 183 (1992).

Molina also presents arguments about Maxson's liability as a dog owner under Nebraska statutes. She acknowledges that Maxson did not purchase the dog, but she argues that by virtue of his status "as resident owner of the Premises," he should be "deemed an owner of the . . . offending dog." Brief for appellant at 22-23. She argues that the dog's presence on the property should have been obvious to Maxson and that he "should be charged with constructive knowledge of the dog's presence if that is necessary to any consideration of the court." Brief for appellant at 23. In terms of statutory liability, Molina argues first that Maxson should be considered an owner of the dog under § 54-605 because he harbored a dog at his home that did not have a statutorily required metal name tag with the owner's name on the dog's collar. She acknowledges that there was no direct evidence about any such tag, but she argues that the district court appeared to adopt a requirement that the defendants, "who would have been the only parties with access to such required tag to produce it, could sit silently by and make no effort to show compliance with the statute and produce

evidence of ownership," while she was "burdened with the task of proving the negative existence of such a tag." Brief for appellant at 24. Molina also cites § 54-606 and argues that the defendants "made no effort to even address the claim of liability for such deemed ownership," again relying on her "to prove such fact from the negative." Brief for appellant at 24.

Section 54-605 provides, "It shall be the duty of every owner or owners of any dog or dogs to securely place upon the neck of such dog or dogs a good and sufficient collar with a metallic plate thereon. The plate shall be plainly inscribed with the name of such owner." Section 54-606 provides, "Every person who shall harbor about his or her premises a collarless dog for the space of ten days shall be taken and held as the owner, and shall be liable for all damages which such dog shall commit." In its summary judgment order, the district court stated that it found Molina's theory under § 54-606 as to Maxson's liability as an owner of the dog "without merit" and "unsupported by argument of counsel." We agree. The record shows that the dog did have a collar, and while the trial record suggests that the dog spent considerably more time on the property, the summary judgment record indicates that the dog was there for shorter, 3-day stretches. Even if Maxson could be considered a person harboring a dog about his premises by virtue of the amount of time Maxson spent there and his ownership of the property, the summary judgment record does not show that the dog was collarless or that it was harbored on the property for 10 day periods. There is no evidence that the dog's collar had the metal plate required by § 54-605, but even if that somehow rendered the dog "collarless" pursuant to § 54-606, the summary judgment record still does not show that the dog was harbored on the premises without a collar for 10 days.

Finally, Molina does not appear to argue that Maxson should have been held liable under § 54-601, and while there was evidence showing genuine issues of material issues of fact with respect to ownership by all or some combination of the Pieschkes, there was no evidence to suggest that Maxson was the dog's owner. In her deposition, Francine testified that the dog was Chad's, but she also testified that Chad had "brought up" getting the dog for the Pieschke children. In his deposition and discovery responses, Maxson identified Chad as the dog's owner. The Animal Control report of the incident identifies Francine as the dog's owner, though it also notes "Dog may be under husband." Molina's discovery responses and Lacy's deposition testimony indicate that the dog had been Chad's and that he then gifted it to Samantha and Trever and or the "Francine Pieschke family." With respect to Maxson, Lacy testified, "I know he wasn't the owner [of the dog]."

The district court properly granted Maxson summary judgment on the issue of his liability as an alleged owner of the dog.

*Jury Selection.*

Molina asserts that the district court erred in failing to dismiss from the jury panel those jurors who expressed their intent to disregard the law if it meant entering judgment against the Pieschke children.

The initial voir dire proceedings in this case were not recorded; however, prior to final selection of the jury, a recess was taken for one of the prospective jurors who indicated on his juror questionnaire that he suffered from a medical condition that might prevent him from being able to serve as a juror. The court questioned this prospective juror about his medical issue outside the

presence of the remaining prospective jurors and then granted Molina's motion to relieve this individual of his juror duty and replace him with one of the other panel members.

During further voir dire proceedings, which were recorded, Molina's attorney asked the panel, "If the instruction is that a minor can own a dog, will you agree to hold that child responsible for the actions of the dog if the law requires that." "PROSPECTIVE JUROR GRAVES" indicated that he would not do so "[w]ithout a lot of details." Three additional prospective jurors also indicated that they would have difficulty holding a child responsible.

The district court then interjected and the following exchange occurred:

THE COURT: Okay. Let me interject here. The question is: If the law tells you one thing and you may believe personally that the law either is or should be different than that, are you refusing to follow the law if I instruct you to do that? That's the question.

PROSPECTIVE JUROR GRAVES: No. That's not the way the question was --

THE COURT: I know. Is anyone here going to refuse to follow the law if I tell you that that's what the law is?

PROSPECTIVE JUROR GRAVES: No.

Another juror (not one of the ones who had previously indicated a problem) also stated that he or she would not refuse to follow the court's instructions as to the law. The court then turned questioning back over to Molina's attorney who proceeded to question the panel on other topics. Subsequently, Molina asked the court to strike Graves for cause, stating, "He's evidenced a resistance to . . . the legal issues that are going to be presented here, resistance to following the law, and I understand he said he would, but I think most of his answers would reflect that that's highly questionable." The court declined to strike Graves for cause, and Molina did not seek to strike any further jurors for cause. Graves did not end up sitting as a juror.

To the extent Molina intends this assignment of error to address any prospective jurors other than Graves, she has waived any such error. Graves was the only juror she challenged for cause before passing the panel to the defendants for questioning. A party who fails to challenge prospective jurors for qualifications and passes such jurors for cause waives any objection to their selection as jurors. *Auer v. Burlington Northern RR. Co.*, 229 Neb. 504, 428 N.W.2d 152 (1988).

With respect to Graves, the competency of a juror is generally presumed, and the burden is on the challenging party to establish otherwise. *Howe v. Hinzman*, 14 Neb. App. 544, 710 N.W.2d 669 (2006). A trial judge is not required to excuse a juror when the juror is able to decide the case fairly and impartially. *Id.* An appellate court defers to the trial court's decision whenever a juror is unequivocal that he or she can be fair or impartial. *Id.* After being questioned by the district court, Graves unequivocally indicated he would apply the law as instructed. The district court did not abuse its discretion in denying the request to dismiss Graves for cause. Further, Graves did not actually sit on the jury. Even if the trial court erroneously overrules a challenge for cause, an appellate court will not reverse the court's decision unless a party can show that an objectionable juror sat on the jury after the party exhausted his or her peremptory challenges. See *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011).

This assignment of error fails for the reasons discussed above.

*Liability of Francine as Mother of Pieschke Children.*

Molina asserts that the jury erred in failing to find Francine in her capacity as the mother of the Pieschke children an owner of the offending dog and liable for Molina's injuries. She argues that the Pieschke children should have been found to be owners of the dog.

There was testimony at trial about when and for whom the dog was purchased. Chad testified that he purchased the dog as a gift for all of the Pieschke children in July or August 2011, that he only had the dog in his separate residence on a couple of occasions in August, and that the dog was otherwise at Francine's residence. Chad indicated that he purchased the dog himself; he also indicated that the children did not pay for it or have any input into the type of dog acquired, although Chad agreed that the children did want a dog. The dog was licensed by Francine in her name. Chad took the dog to the veterinarian for an initial checkup, but he did not know if there had been any subsequent appointments. He confirmed that the children did not pay for the initial checkup and that the appointment was not made at the children's direction.

Samantha's testimony about when the dog was acquired was consistent with Chad's. Samantha recalled getting the dog around the end of July 2011 and testified that it was not a birthday present to her. Samantha testified that Chad purchased the dog for her and her siblings; she did not recall whether she ever told Molina that Chad had gotten the dog for her. She also confirmed that the dog lived in Francine's residence starting in July.

In contrast to Chad's and Samantha's testimony, both Lacy and Molina recalled first observing the dog at the Pieschke residence when they were there for Samantha's birthday party. They both testified that Samantha was excited and told them that Chad had gotten her the dog for her birthday. We note that, while Samantha's birthday is in December, neither Lacy nor Molina could pinpoint the date of the party, and Molina testified that it occurred before Thanksgiving and Christmas. Lacy also acknowledged her answers to certain interrogatories, wherein she stated that Francine told her the dog belonged to Chad but had been given to "the Francine Pieschke family as a Christmas gift in December 2011."

Other than Chad's testimony about taking the dog for an initial veterinarian checkup and the dog being licensed by Francine, there was no testimony about who cared for or had responsibility for the dog on a daily basis. There was limited testimony about Trever's and Francine's interactions with the dog on the date of the accident. Lacy recalled speaking with Trever at her residence that evening, and she indicated he told her he had been in charge of putting the dog in the kennel prior to the accident. She also testified to Francine's report that "Trever had taken that responsibility to take the dog out" since "they had put [Francine] on" "something for her teeth" following a dental appointment. Molina's grandmother recalled Trever stating that he tried to stop the dog. Molina testified that she observed Trever shut the dog in the bathroom in the house following the accident. In his testimony, Trever acknowledged taking the dog outside to the kennel on the date of the accident. According to Trever, he was in the pen with the dog when it became excited, accidently unlatched the kennel door with its paw, and got out. He did not recall being at Molina's residence later that day or making any statement about being in charge of the dog. Samantha recalled Trever putting the dog in the kennel prior to the accident, Trever being in

the kennel when the dog escaped, and both Trever and Francine helping pull the dog off Molina following the attack.

The jury was instructed that before Molina could recover against any of the defendants, she must prove by the greater weight of the evidence that one or more of the defendants was the dog's owner and that Molina sustained damages from the dog bite. The jury instructions stated that "[o]wnership may include among other evidence of ownership, the following: the right to possess and use, to keep, to harbor or have charge, custody, or control of a thing to the exclusion of other persons." The jury was also instructed that minor children are capable of owning personal property and that dogs are personal property. Molina does not challenge any of these instructions.

Based on our review, there was sufficient competent evidence to support the jury's determination that Chad and Francine in her individual capacity were the dog's owners. While there was also evidence to suggest that the Pieschke children were the owners, or were additional owners, of the dog, the jury resolved this conflict in the children's favor. And, when reviewing a jury verdict, we must resolve evidentiary conflicts in favor of the successful party. See *Pantano v. American Blue Ribbon Holdings*, 303 Neb. 156, 927 N.W.2d 357 (2019). The jury's determination that Chad and Francine in her individual capacity, and not the Pieschke children, were the dog's owners was not clearly wrong.

*Damages.*

Molina asserts that the jury's determination of damages in the amount of $35,000 was clearly wrong, inadequate, and unsupported by the evidence. However, Molina does not specifically argue this assigned error in the argument section of her brief. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Diamond v. State*, 302 Neb. 892, 926 N.W.2d 71 (2019).

Molina does briefly summarize an argument in support of her assigned error in the summary of argument portion of her brief. There she references the amount of the jury verdict; evidence with respect to her medical treatment and expenses and the cost of scar revision surgery, should she elect such future treatment; and evidence with respect to the severity and longevity of her injuries, as well as her young age. She also states her position that the award of $35,000 "for the terror and pain of the attack and the lifetime reminder of the attack falls far short of [her] damages," and she argues that "a new trial should be ordered for consideration of that issue." Brief for appellant at 15.

We have reviewed the evidence referenced by Molina in the summary of argument section of her brief, as well as the district court's evidentiary rulings and jury instructions with respect to that evidence. Even if Molina had repeated the summarized argument in the argument section of her brief, she has not shown that the award of damages was so inadequate as to be the result of passion, prejudice, mistake, or some other means not apparent in the record. See *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011). We decline to address this assignment of error further.

CONCLUSION

The district court did not err in sustaining the motion for summary judgment in favor of Maxson. The court did not abuse its discretion in refusing to strike prospective juror Graves for cause. Molina has not shown that an objectionable juror sat on the jury after the she exhausted her peremptory challenges, and she has waived any objection to the selection of other individuals as jurors. The jury's finding that the Pieschke children were not owners of the dog is not clearly wrong. Because Molina did not specifically argue her assigned error with respect to damages, we do not address it, except to the extent discussed above.

AFFIRMED.